No. 33,582

THE NATIONAL RESERVE LIFE INSURANCE COMPANY, *Appellant,* v. JENNIE BOYLE JEFFRIES, *Appellee.*

(75 P. 2d 302)

filed January 29, 1938.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman*, all of Topeka, for the appellant.

*Karl V. Shawver*, of Paola, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action was brought by the insurance company to cancel a life insurance policy on the ground of fraud. Plaintiff alleged this particular policy was issued and delivered without a medical examination and on the strength of the statements contained in the application proper and those contained in a health certificate executed by the applicant. Defendant, beneficiary and wife of the deceased, filed an answer and cross petition, in which she denied the fraud and sought recovery for $2,000, the face value of the policy, and interest. She prevailed, and plaintiff appeals.

A word concerning the practice of the plaintiff insurance company as to the issuance of policies similar to the instant one, without a previous medical examination, may be helpful. The plaintiff company had adopted a plan of issuing additional insurance policies upon the life of its policyholders whose existing policies were in good standing and whose previous records showed a good medical history, without requiring an additional medical examination, where the new application of the insured and the new health certificate, signed by the applicant, disclosed certain desired information, which information or representations formed the basis for the new contract of insurance.

The deceased had previously, in 1921, been insured by the plaintiff company in a $5,000 policy, which was in good standing. Plaintiff elected the insured as a proper prospect for such insurance. Plaintiff's petition alleged, and it contends:

"VIII. The plaintiff issued its contract of insurance upon the life of Joseph J. Boyle in reliance upon the statements and representations made by the said Boyle, now deceased, with particular reference as to the sound and good health of said Boyle. In truth and in fact the said Boyle was not in good and sound

health at the time of making the application and the issuance and delivery of the policy, and said statements contained in the application and in the health certificate aforesaid were false and untrue and known by the said Boyle to be false and untrue. Had the plaintiff known that said statements were false and untrue and that said Boyle was not in good health, it would not have issued its policy of insurance.

"Plaintiff issued its contract of insurance upon the life of Joseph J. Boyle in reliance upon the statements and representations made by the said Boyle in his health certificate, and with particular reference to his sound and good health and the fact that he had not undergone medical treatment since the date of his last medical examination upon which a policy of insurance had been issued. In truth and in fact Boyle was not in good health at the time of the issuance and delivery of the policy and at the time he made the health certificate, and in truth and in fact he had previously undergone medical treatment at the date of his last medical examination upon which a policy of insurance had been issued on his life, which fact was known to him at the time he signed the declaration of health, and said statement and representation with reference thereto as contained in the health certificate was false and untrue and known by the said Boyle to be false and untrue. Had the plaintiff known of the falsity and untruthfulness of the representations contained in the health certificate, and particularly with reference to previous medical treatment and the condition of good health, it would not have issued its policy of insurance."

"XI. On account of the false and fraudulent representations made by the deceased Boyle and relied upon by plaintiff in issuing its contract of insurance and because it has no adequate remedy at law, the plaintiff is entitled to have said contract canceled and set aside."

"XII. On or about April 2, 1934, the defendant, Jennie A. Boyle, furnished written proof of death to the plaintiff company, which proof of death disclosed that Joseph J. Boyle, the deceased policyholder, was not in sound and good health at the time of the making of said application for insurance in the plaintiff company, or on July 26, 1933, when he executed the health certificate and accepted delivery of the policy in controversy. Said proofs of death also disclosed that the said Boyle had undergone medical and surgical treatment prior to the issuance of said policy and prior to the execution of said health certificate on July 26, 1933, and subsequent to the date of his last medical examination, which was on November 20, 1921. The plaintiff company had no previous knowledge of the actual condition of deceased's health and the fact that he had undergone medical treatment and the falsity of his statements and representations as made in the application and health certificate, and the fraud of the deceased was first discovered when the proof of death was furnished to it as aforesaid."

The policy was issued June 17, 1933. The insured died March 25, 1934. The present action was filed July 2, 1934, and hence was filed within the two-year contestable period provided in the policy. The action was tried without a jury. The complaints pertain to orders overruling plaintiff's motion to set aside findings of fact and conclu-

sions of law, and the overruling of the motion for a new trial. The findings of fact made were:

"I. Joseph J. Boyle, deceased, was insured in the plaintiff company under policy No. 1883, in the face amount of five thousand ($5,000) dollars, the policy being dated the 30th of November, 1921, registered in the office of the insurance department of the state of Kansas on December 16, 1921, payable on its face to his wife, Jennie Boyle, at which time Boyle gave his age as thirty-five years. The application is dated the same date of the policy, and the medical examination is attached as part two of the policy, dated the same date of the policy, and recites, among other things, that he had had a right shoulder broken in a wreck in 1909; that he had had typhoid fever in 1900, and that his father had died of apoplexy at the age of sixty-nine. This policy was kept in force until Boyle's death on March 26, 1934, and upon proof of death submitted, the plaintiff company paid the full face of that policy to Boyle's mother, Julia Boyle, the then beneficiary.

"II. On the 3d of June, 1933, an application was executed by Joseph J. Boyle for an additional contract of insurance on his life in the sum of two thousand ($2,000) dollars, and at the same time, on the 3d of June, 1933, a premium note or loan agreement was signed by the said Joseph J. Boyle and delivered to the company's agent, E. J. Newbegin, which loan agreement provided in substance that the National Reserve Life Insurance Company of Topeka, Kan., on the 3d of June, 1933, had made a loan to Joseph J. Boyle of sixty-five dollars and twenty-six cents ($65.26) on policy No. 1883, and the said Boyle assigned the benefits of that policy, No. 1883, to secure the payment of this loan of sixty-five dollars and twenty-six cents ($65.26). This loan agreement is dated the 3d of June, 1933, and signed by Joseph J. Boyle and witnessed and delivered in the presence of E. J. Newbegin, as of that date. On the back of this loan agreement appears in writing, among other things, 'Paid to 6-17-34.'

"Contract of insurance No. 20775, for two thousand ($2,000) dollars, was issued to Joseph J. Boyle, of Osawatomie, Kan., payable to his mother, Julia Boyle, with the right to change beneficiary. The policy was issued the 17th of June, 1933, registered in the insurance department on the said date and delivered as of the same date at Osawatomie, Kan., to the said Joseph J. Boyle, at which time and on which date the said E. J. Newbegin changed the typewritten figure '3,' date of the application, to the 17th of June, 1933, to correspond with the date of the issuance of the policy, the registration thereof, in the office of the insurance department and the delivery of policy to Joseph J. Boyle, and at said time and on June 17, 1933, the health certificate bearing date of July 26, 1933, was not a part of said contract. That the contract of insurance, No. 20775, was and is in full force and effect as, of and from the date of June 17, 1933.

"That said policy provided on its face, among other things, 'the benefits and provisions printed or written by the company on the following pages are a part of this policy as fully as if they were recited at length over signatures hereto affixed.' Part of the application in printed form on back of the policy was not filled out at the time of the execution and delivery of the policy. That

part one of the application attached to said contract of insurance, the subject of this lawsuit, provided, among other things:

" 'I hereby declare and agree: 1. That the foregoing statements, together with the declaration and my statements and answers, and also those made in part 2 hereto, if required, shall constitute my application for insurance on applicant. The statements and answers are full, complete and true and are offered by me as the basis for the proposed contract for insurance. 2. That, except as otherwise stated in the form of receipt hereto attached, there shall be no contract of insurance until a policy shall have been issued and delivered to me and the first premium paid thereon during applicant's lifetime and continued good health, and that such delivery and payments shall constitute acceptance of the policy as issued.'

"Section ten of the contract of insurance provided:

" 'This policy, and the application herefor constitute the entire contract between the parties hereto. All statements made by the insured as the basis for the contract shall, in the absence of fraud, be deemed representations and not warranties, and no such statements shall avoid this policy or be used in defense to a claim hereunder, unless it be contained in the written application herefor and unless a copy of the application be endorsed hereon or attached hereto when this policy is issued.'

"Section eighteen of the contract of insurance provided:

" 'This policy is issued in consideration of the payment in advance of sixty-five dollars and twenty-six cents, and in further consideration of the payment in advance of a like amount on or before the seventeenth day of June, nineteen hundred thirty-four, and each year thereafter during the continuance of this policy until death of the insured. Upon payment of the first premium this policy takes effect as of the seventeenth day of June, nineteen hundred thirty-three.'

"That on July 26, 1933, Joseph J. Boyle executed a health certificate which was received by the National Reserve Life Insurance Company on July 29, 1933, and stated, among other things, first, that applicant has not undergone any medical or surgical treatment since the date of my last statement, and/or medical examination in connection with insurance on the life of Joseph J. Boyle in the National Reserve Life Insurance Company, Topeka, Kan.

"2. That so far as I know or believe applicant now is in sound health.

"3. If, at any time, the foregoing statements shall be found to be untrue in any respect, the company shall have the right to declare null, void and of no effect such action as it may have taken upon said application.

"III. Joseph J. Boyle died on March 26, 1934. Proofs of death were submitted and filed with the plaintiff company on or about April 2, 1934, and said claimant's statement or proof of death was sworn to by Jennie A. Boyle, the widow of Joseph J. Boyle, insured, under the contract No. 20,775, for two thousand ($2,000) dollars, and disclosed, among other things, in her proof of death that Joseph J. Boyle died of a hemorrhage. That his health first became affected in 1930. The attending physician's statement indicated that he had attended Joseph J. Boyle in September, 1931, for haemophagia, chronic constipation and hypertension from 1931 to 1934. Cause of death was hemorrhage from lung, primary hypertension.

"The plaintiff company would not have issued the policy sued on herein to Joseph J. Boyle, deceased, had it known that said Joseph J. Boyle, deceased,

was not in good health, either on June 17, 1933, or had it known that the said Boyle was, at the time of the delivery of the policy in question, suffering from the diseases as shown by the doctor's statements contained in the proofs of death, and the plaintiff company issued the contract of insurance in reliance upon the representations, statements and warranties made by the deceased Boyle in his application made of June 17, 1933, and delivered same in reliance upon said application.

"IV. That the proofs of death by Jennie A. Boyle, the then beneficiary, were executed on the form provided by the company and duly and properly made and executed and received by the company.

"V. The deceased, Joseph J. Boyle, died of an internal hemorrhage near the arch of the aorta. An aneurysm is a weakened condition of the articular tree, something comparable to a sand blister on an innertube of an automobile tire. The constant pumping of the blood and the pressure injures this weakened vessel until it ruptures. That is what happened to Boyle, resulting in a stroke, so called, causing his death. This may be caused from a blow or develop gradually, and the deceased Boyle was not conscious of this condition and the plaintiff has failed to prove by the evidence that deceased Boyle was conscious of this fact or misrepresented any conditions of his health in the health certificate executed on the 26th of July, 1933.

"VI. The plaintiff rested its case without having proven a surrender of the premium note or a tender of the same to Jennie Boyle, the defendant herein.

"VII. That the original beneficiary in the policy, No. 20,775, was named Julia Boyle, mother of the deceased. The name of the beneficiary, however, was agreeably changed by the parties to Jennie A. Boyle, the defendant, wife of Joseph J. Boyle, deceased, before his death. That, by an order of this court, based on stipulation of the parties, all proceedings in this cause were ordered to be entitled, 'The National Reserve Life Insurance Company, a Corporation, Plaintiff, v. Jennie Boyle Jeffries, Defendant.'

"VIII. The court further finds that the contract of insurance No. 20,775, for two thousand ($2,000) dollars, payable to the defendant on the death of Joseph J. Boyle, was in full force and effect at the date of the death of said Joseph J. Boyle on March 26, 1934, and that due proof has been made by the defendant above named, as provided by the contract.

"IX. The court finds that the plaintiff has failed to prove the fraud alleged in its petition.

"X. The plaintiff has failed to prove that the health certificate was attached to the policy at the time of the issuance and delivery of the same."

Conclusions of law were made in conformity with these findings. We need not set forth the detailed findings requested by the plaintiff. Their contentions will be fully treated in the course of the opinion.

Appellant contends the trial court erred in finding the health certificate was no part of the contract of insurance. (Finding No. 2.) Appellant also insists that finding No. 5, with reference to the provisions of the health certificate, completely ignores the express representation therein contained that the insured had undergone no medi-

cal treatment since his last statements and/or medical examination in connection with insurance in this company. Appellant is entirely correct in that respect as to finding No. 5. If, however, the health certificate formed no part of the insurance contract, then that particular objection to finding No. 5 becomes immaterial.

Under the circumstances in the instant case, was the trial court warranted in finding the health certificate was no part of the contract? Appellant insists the application discloses on its face that it was approved on June 1, 1933, subject to a health certificate, and that the health certificate provided that the statements therein contained should constitute an addition to and be a part of the application, and that the policy itself provided that it and the application therefor constituted the entire contract. The trial court, however, found that the health certificate was not attached to the policy on the date it was issued, to wit, June 17, 1933. That it was necessary the health certificate should be attached to the policy at the time of its issuance clearly appears from the express terms of paragraph ten of the policy contained in finding of fact No. 2. It is well to note that paragraph of the policy is made mandatory by G. S. 1935, 40-420 (2). That the policy was issued and registered in the office of the state superintendent of insurance on June 17, 1933, is conceded. That the health certificate was executed on July 26, 1933, is likewise conceded. Obviously it was not attached to the policy on the date the policy was issued.

Appellant further contends the trial court erred in finding the policy was delivered on June 17, 1933 (finding No. 2.), and that finding No. 3 concedes the issuance and delivery were on different dates. It insists that according to the uncontradicted testimony of the agent who took the application and delivered the policy, the policy was delivered on July 26, and that the health certificate was attached on that date. We are not permitted to alter the plain language of the statute, which was made a part of the contract and written into the policy. It follows we cannot substitute the word "delivered," for the word "issued." Moreover, the record presents a further barrier to the contention that the health certificate was even attached to and became a part of the policy on its delivery. The beneficiary offered the policy in evidence, without the health certificate being attached thereto, and it was received in evidence, in that condition, without objection by appellant that it did not constitute the entire contract of insurance. Under these various circumstances we cannot disturb

the finding that the health certificate was not made a part of the contract.

But what about the other representation of applicant's good health contained in the application which was attached to the policy when it was issued, and which according to the express terms of the policy constituted a material part of the contract of insurance? The representation as to good health contained therein was likewise expressly alleged to have been fraudulently made. The portion thereof which pertains to the health of the applicant is contained in two statements. They read:

"I hereby declare and agree: 1. That the foregoing statements, together with the declaration and my statements and answers, and also those made in part 2 hereto, if required, shall constitute my application for insurance on applicant. The statements and answers are full, complete and true, and are offered by me as the basis for the proposed contract for insurance.

"2. That, except as otherwise stated in the form of receipt hereto attached, there shall be no contract of insurance until a policy shall have been issued and delivered to me and the first premium paid thereon during applicant's lifetime and continued good health, and that such delivery and payments shall constitute acceptance of the policy as issued."

Under the ordinary or usual kind of policy in which a medical examination is required, and which investigation thus becomes the basis on which the policy is issued, the applicant is required to give a history of the previous condition of his health, medical examination, treatment, etc. This information enables the insurer to better investigate the risk. It is these statements to which No. 1 of the quoted portion of the application applies, where a medical examination is had. As previously stated, no medical examination was required of the applicant under this particular kind of policy, in the event he represented his health to be good. The information to which paragraph No. 1 of the application referred, was therefore not required to be supplied in the instant case. The provisions of paragraph No. 2, however, contain a definite and express representation concerning the applicant's good health. Without making this specific representation the applicant knew he could not obtain the new $2,000 policy without subjecting himself to a medical examination. He made the representation, and on the strength of it, together with the representations contained in the health certificate, the policy was issued without requiring such examination. The fact he also executed a health certificate which contained representations in addition to good health, obviously does not relieve him of the representa-

tions as to good health contained in portion No. 2 of the application. It appears that provision No. 2, above quoted, has by some courts been held to apply only to a new element of risk, due to a change of physical condition arising after the company's investigation has been made. Such a restricted construction has not been adhered to by this court, as being applicable irrespective of the particular circumstances involved. In the case of *Klein v. Farmers and Bankers Life Ins. Co.*, 132 Kan. 748, 297 Pac. 730, the same contention was made, and the case of *Priest v. Life Insurance Co.*, 116 Kan. 421, 227 Pac. 538, was cited in support of the contention. This court in a unanimous opinion refused to uphold the contention. The late Chief Justice Johnston, writing the opinion, in no uncertain terms expressed the views of this court on the subject as follows:

"An ingenious argument is presented that he was in as good health at the time of the demand as he was when the application was accepted, and that the applicant should be regarded as still in good health unless there has been a change in the condition of his health between the date of his medical examination and the delivery of the policy. It is true the evidence was that there was no noticeable difference in the applicant's health between the making of the application and the refusal to deliver the policy. Reference is made to a statement in *Priest v. Insurance Co.*, 116 Kan. 421, 227 Pac. 538, in which it was said:

" 'The effect of a clause that a life insurance policy shall not take effect unless the applicant is in good health at the time of its delivery is to protect the company against a new element of risk through a change in the applicant's condition arising after the company's investigation had been made.' (Syl. ¶ 5.)

"In that case the policy had been delivered and the premium paid, and it was held that:

" 'Where false answers concerning his health were knowingly made by an applicant for life insurance, the fact that the agent through whom the application was made, but who was not authorized to decide whether the policy should be issued, knew of their falsity does not prevent the company from successfully resisting payment on the ground of such fraud.' (Syl. ¶ 4.)

"While it is said that the term is one for the protection of the company against a new element of risk, *it is not necessarily the only one*." (p. 752.) (Italics inserted.)

While the general rule was correctly stated in the syllabus (paragraph 5) in the Priest case, the opinion clearly indicates it was not intended to apply to a situation where there had been actual misrepresentation concerning a fact of which the applicant was conscious at the time of making the application, and where the insurance company made no investigation of its own. It was there said:

"The policy contained the familiar provision that it should not take effect 'unless the applicant is in good health at the time of its delivery.' We do not

interpret this to mean that no contract of insurance results if the insured at the time he made his application suffered from an ailment *of which he was not conscious* and which still existed when he received the policy. *Where, without misrepresentation* on the part of the applicant, an insurance company *after due investigation* accepts the risk, and a post-mortem examination reveals that the seeds of a fatal disease existed before the acceptance, the clause referred to will not avail to defeat the collection of the policy." (p. 428.) (Italics inserted.)

The rule announced in the Klein case, that the representation concerning good health does not always apply only to a changed condition which involves a new element of risk, is especially applicable in the instant case. Here no medical examination was made. Where the insurer has actually obtained the information resulting from a medical examination it of course stands in a less favorable position to demand a forfeiture. In *Van Ross v. Metropolitan Life Ins. Co.,* 134 Kan. 479, 7 P. 2d 41, this principle was clearly recognized. It was there stated:

"It has also been held that sound health is a comparative term, and where the insurance company makes a medical examination of the applicant before issuing the policy, as was done in this case, exactions under the forfeiture provision are not so great." (p. 488.)

In the instant case, however, the issuance of the policy, without a *medical examination,* depended solely upon the truthfulness concerning the representation as to good health. That representation was known by the insured to be the sole condition upon which he obtained the policy. Had the representation not been made, a medical examination would have been required which would have revealed the fact that the applicant over a period of years had been suffering with, and had been treated for, the identical ailment of which he died within about nine months after he had represented his health to be good. The ailment was hypertension, commonly known as high blood pressure. The matter misrepresented having actually contributed to the contingency or event on which the policy was to become due and payable, the misrepresentation was a material one and rendered the policy void. (G. S. 1935, 40-418; *National Reserve Life Ins. Co. v. Humphreys,* 145 Kan. 373, 376, 65 P. 2d 296, and cases there cited.) The fact that his health first became affected about three years before he made the misrepresentation as to his good health, and the fact that he died of a hemorrhage of the lungs, was disclosed by the proof of death furnished by the beneficiary. That portion of the proof of death signed by the attending

physician disclosed the insured had suffered from hemophagia, a stroke, in 1931, and had been treated for hypertension from 1931 to 1934, and that hypertension was the primary cause of his death on March 26, 1934. The proof of death was furnished to the insurer by the beneficiary as a basis for recovery as provided by statute. (G. S. 1935, 40-420, [10].) The proof of death was competent to show the existence of the ailment and the fact that the insured had been treated therefor. (8 Couch on Insurance, § 2200, pp. 7116, 7117, § 2227; 7 Coolcy's Briefs on Insurance (2d ed.), § 10 (b), p. 5928; 4, Id., § 20 (h), p. 3403; *National Life & Accident Ins. Co. v. Puckett*, 217 Ala. 110, 115 So. 12; *Stephens v. Met. Life Ins. Co.*, 190 Mo. App. 673, 176 S. W. 253; *Smiley v. John Hancock Mut. Life Ins. Co. of Boston, Mass.*, [Mo. App: decided 1932] 52 S. W. 2d 12.) For conclusiveness where not controverted, see annotation 93 A. L. R. 1349.

In view of the authorities cited, it seems clear the facts contained in the proof of death established at least a prima facie case of the ailment of the insured and that he had been receiving treatment therefor. These facts were in no wise attempted to be rebutted.

What is good health? In the Klein case, *supra*, it was said:

"What is good health as used in the insurance contract like the one in question? It is not apparent good health, nor yet a belief of the applicant that he is in good health, but it is that he is in actual good health. Of course, slight troubles or temporary indisposition which will not usually result in serious consequences, and which do not seriously impair or weaken his constitution, do not establish the absence of good health, but if the illness is of a serious nature, such as to weaken and impair the constitution and shorten life, the applicant cannot be held to be in good health. (*Miller v.. Knights and Ladies of Security,* 103 Kan. 579, 175 Pac. 397; *Pickens v. Security Benefit Association,* 117 Kan. 475, 231 Pac. 1016.)" (p. 753.) (To the same effect see, also, note at 40 A. L. R. 662, and *Van Ross v. Metropolitan Life Ins. Co.,* supra.)

The trial court expressly found the evidence disclosed that the health of the insured first became affected in 1930, and that he had been attended by his physician for hemophagia, chronic constipation and hypertension from 1931 to 1934, and that the primary cause for the hemorrhage which occasioned his death was hypertension. (Finding No. 3.) Notwithstanding such finding, the trial court denied cancellation of the contract on the ground the plaintiff failed to prove the insured was conscious of his ill health. In other words, cancellation was denied and recovery was allowed on a contract although the sole representation and condition upon which it was

entered into did not exist. Let us pursue the subject a step further. It may readily be conceded that a person afflicted with hypertension might not be conscious of his ailment without having consulted a physician. The evidence disclosed that men with this affliction frequently continue their active duties while suffering therefrom. How can it, however, be maintained with reason that a person is not conscious of that condition when his doctor expressly continued to tell him "he was in bad health." Such was the evidence in the instant case. True, the evidence of physicians, called by both plaintiff and defendant, was to the effect that patients suffering from this particular ailment frequently disbelieve such advice and continue to ignore it. So in the instant case the evidence of the attending physician who signed the proof of death and who was called as a witness by the appellant, revealed that he continued to tell the insured he was in poor health and that the insured insisted he was in good health. Yet, notwithstanding such avowed disbelief of his doctor's advice, he continued to call upon him for treatment. Clearly, we cannot proclaim the doctrine that notwithstanding the advice of the insured's physician, and the active and affirmative compliance therewith in returning for treatments, the insured was not conscious of the fact he was not in good health. It must be remembered the findings of the trial court are not based on conflicting medical testimony. There was no evidence that any other doctor had ever advised the insured he was in good health. Appellee suggests there was no evidence that hypertension was a permanent affliction, and that the evidence disclosed the insured was only incapacitated for about four or five weeks from the ailment in 1931, which the doctor identified as a slight stroke. It is also urged the beneficiary denied that the doctor had in 1931 identified the illness as a stroke. The doctor's testimony did disclose that the clot from the 1931 stroke might have been entirely absorbed, but his evidence was also definite that, in his opinion, the clot on the brain in 1931 was absolutely caused by hypertension, and that nature itself would increase the hypertension with age. In view of the entire record, the insured clearly was not in good health and was conscious of that fact when he signed the application.

The defendant urges the testimony of the insured's physician constituted a privileged communication, and that the waiver clause contained in the application was not executed. As to that identical question, this court, in the Priest case, *supra*, said:

"The weight of authority appears to be that declarations made by the insured concerning his health are not admissible against the beneficiary to show the falsity of representations made in the application. (25 Cyc. 936; 14 R. C. L. 1438.) But a distinction is made, which we regard as sound, in favor of their admissibility upon the issue of the insured having knowledge of such falsity. (See texts just cited, and notes.)" (p. 427.)

The contents of the proof of death, being unrebutted, showed the existence of the ailment and the fact that the insured had been treated therefor. The evidence of the physician was competent to show the insured had knowledge of the falsity of the representation concerning his good health.

The trial court further found, "the plaintiff rested its case without having proven a surrender of the premium note or a tender of the same to Jennie Boyle, the defendant herein."

The appellant was not only a plaintiff, but also a defendant in the instant case. Shortly before the beneficiary rested her case, and near the end of the trial, she testified to the effect that appellant had not returned the premium note. The former $5,000 policy, which had been pledged as security for the premium note in the instant policy, had been paid in full. Appellant, at the time of this remark by the beneficiary, searched its files and discovered the note. The record discloses it was then presented in court. Counsel for the beneficiary in fact introduced it in evidence. After counsel for the beneficiary had finished his redirect examination of the beneficiary he announced, "defendant rests." Appellant immediately presented the note to the beneficiary in person. The finding of the trial court under these circumstances cannot be sustained.

The judgment must be reversed with directions to enter judgment for the appellant. It is so ordered.

HARVEY, J., dissenting.