No. 37,855

Loyd W. Minear, *Appellee,* and *Cross-Appellant,* v. Benefit Association of Railway Employees, a corporation, *Appellant,* and *Cross-appellee.*

(218 P. 2d 244)

Opinion filed May 6, 1950.

*Leonard O. Thomas,* of Kansas City, argued the cause, and *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder* and *Lee E. Weeks,* all of Kansas City, were with him on the briefs for appellant and cross-appellee.

*H. S. Roberts,* of Kansas City, and *Robert L. Robertson,* of Kansas City, Mo., argued the cause, and were on the briefs for appellee and cross-appellant.

The opinion of the court was delivered by

Price, J.: The ultimate question in this case concerns the liability of defendant insurance company under the provisions of a health and accident policy issued to plaintiff.

The policy, which provided for payment of $80 per month for a period not exceeding eighteen months for disability due to illness,

was dated November 13, 1944. In the spring of 1946 plaintiff made claim for disability on account of a heart ailment and received from defendant company the monthly disability benefits for four consecutive months in accordance with the provisions of the policy, following which defendant refused to make further payments. In June, 1948, plaintiff sued to recover the remaining fourteen months' disability benefits totalling $1,120. Defendant answered denying liability on the ground that plaintiff's illness was not contracted and did not begin during the life of the policy but had been in existence for some time prior to the issuance thereof, and on the further ground that answers to certain questions contained in the application for the policy were knowingly falsely made by plaintiff, thereby voiding the policy which it is alleged would not have been issued except for such false and fraudulent representations on the part of plaintiff.

The case was tried by a jury which returned a general verdict for plaintiff in the amount of $1,120 and answered special questions. During the course of the trial defendant's demurrer to plaintiff's evidence was overruled as was its motion for a directed verdict at the close of all the evidence. Defendant's motion for judgment on the answers to special questions was also overruled, but its motion for a new trial was sustained. Defendant company has appealed from the order overruling its demurrer to plaintiff's evidence and from the orders overruling its motions for a directed verdict and for judgment on the special findings. Plaintiff has cross-appealed from the order sustaining defendant's motion for a new trial.

The ruling on the demurrer to plaintiff's evidence is made appealable by statute (G. S. 1935, 60-3302) and it has been held that even where a defendant's motion for a new trial has been sustained an appeal still lies from the order overruling a demurrer to plaintiff's evidence. (*Henderson v. National Mutual Cas. Co.,* 166 Kan. 576, 203 P. 2d 250.) But with respect to the action of the court in overruling defendant's motions for a directed verdict and for judgment on the special findings we hold that such matters are not before us due to the granting of a new trial, and we will therefore confine ourselves to the one proposition concerning the correctness of the order overruling the demurrer to plaintiff's evidence.

The evidence of plaintiff disclosed that at the time of trial he was thirty-eight years of age and that he formerly lived in Emporia, where he worked for the Atchison, Topeka & Santa Fe Railroad

Company as a road fireman. On August 2, 1943, while so employed, he was injured when a manhole cover fell on his right big toe as a result of which he was hospitalized in the Santa Fe Hospital in Topeka. A general infection set in, resulting in fever and severe backaches, and while in the hospital he was told by his doctors that he had an arthritic condition. He was a patient in the hospital from August, 1943, until February, 1944. Shortly after his release from the hospital he went to his former home at Unionville, Mo., where he consulted with a Dr. Henson. The latter advised him that he had a weak heart and was suffering from rheumatic heart fever as a result of the injury sustained the previous August.

He returned to his work with the Santa Fe, and in November, 1944, while at the Topeka roundhouse, was contacted by one Downer, an agent of defendant company. They discussed the matter of plaintiff buying a health and accident policy and plaintiff told Downer of his physical condition and expressed doubt that he was an insurable risk. At Downer's suggestion they went to the Santa Fe Hospital to check plaintiff's medical records. They returned to the roundhouse and after further conversation Downer proceeded to fill out an application blank. Questions 14 and 15 of the application are as follows:

"14. Have you been sick or injured or treated or examined by any doctor during the past two years other than periodical company medical examination? (Answer fully.)

"15. Have you now or have you ever had tuberculosis, hernia (rupture), venereal disease or infection, or any chronic disease or disorder, or have you now or have you had any deformity of body or mind, or any defect in hearing or vision, or lost any part of your body?"

Each of these questions was answered "No" in the handwriting of Downer, with the full knowledge of plaintiff.

A portion of question 16 of the application, material for our purposes, reads:

"16. Do you agree: (a) That you have read or heard read and understand all the statements and answers as written or printed hereon of this application, whether written by your own hand or not, and that they are made by you to obtain said insurance; that if any one or more of them be false, all right to recover under said policy shall be forfeited to the Association, if the matter misrepresented in any way contributes to any loss under which claim is made? . . ."

This was answered "Yes" in the handwriting of Downer, with the full knowledge of plaintiff.

Plaintiff himself signed the application, and excerpts from his testimony concerning this are as follows:

"Q. State to the court and jury whether you went ahead and signed the application that was there being filled out, and which we have had under discussion? A. Yes, sir.

"Q. What, if anything, did Mr. Downer say to you at the time you were signing it? A. Well, he said, 'I will send it in to the company, and if they o-keh it, we will take the premium out of your next pay check.'

"Q. Did he say anything to you, or if so, what did he say in reference to his own signature on this application. A. I can't remember that he said any particular thing, only he would approve it and send it in to the company."

Plaintiff further testified that at all times he believed what his doctors told him and at no time did he ever doubt that he was suffering from a rheumatic heart condition brought on by the infection resulting from his injury of August, 1943.

In February, 1946, he was laid off by the Santa Fe, with the statement that he had a rheumatic heart condition. He moved to Iowa where he worked as a taxi driver and then as a hotel clerk. Later he brought suit against the Santa Fe, alleging that as a result of the injury sustained in August, 1943, his heart "was seriously and permanently affected and afflicted".

The application and policy were introduced in evidence. Material portions of the latter are:

"The insurance hereunder is granted in consideration of the application for this policy, a copy of which is attached hereto and made a part hereof, and . . . provides indemnities."

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"(2) for disability resulting from illness which is contracted and begins during the life of this policy and after it has been maintained in continuous force for fifteen days from its date, . . ."

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance. . . .",

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"No statement made by the applicant for insurance not included herein shall avoid the policy or be used in any legal proceeding hereunder. No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the Association and such approval be endorsed hereon.

". . . No waiver of any of the provisions of this policy shall be valid unless agreed to in writing by an executive officer of the Association and attached hereto or endorsed hereon. . . ."

Plaintiff's claim for disability benefits, filed with defendant company in the spring and summer of 1946, listed his illness as "rheumatic heart"; stated that he first consulted a doctor in February of that year, and that he had never been ill or treated for this condition before. Physicians' statements attached to his claims listed his illness as "Rheumatic heart disease" and "Septic Traumatic Heart Lesion."

Was plaintiff's evidence, even construed in its most favorable light, sufficient to withstand the demurrer?

Defendant argues that it clearly shows both plaintiff and agent Downer knew the answers to questions 14 and 15 on the application were false and that each knew that whether a policy was to be issued was to be determined by the application sent in to the company. It further contends that the disability sued upon was not a disability insured against for the reason that the evidence undeniably shows plaintiff's heart condition to have been in existence prior to and at the date the policy was issued.

On the other hand, plaintiff argues that Downer was acting for defendant company, not plaintiff; that he, plaintiff, did not withhold any facts from Downer; that he had a right to assume Downer had the authority to do what he did in filling out the application; that the company is bound by Downer's acts, and that defendant should be estopped from denying liability under its contract.

Boiled down to its very essence, the evidence of plaintiff unmistakably shows that as a result of his injury in August, 1943, he was hospitalized for about six months and was suffering from a rheumatic heart condition. The policy was applied for about nine months subsequent to his release from the hospital. At all times during the period in question plaintiff entertained no doubt concerning his true physical condition. The policy in question was the nonmedical type. The answer to questions 14 and 15 were clearly false and plaintiff knew they were false when he signed the application. He knew that the policy would not and could not be issued until approved by the home office and that such approval would depend upon the facts shown by the application. The very disability for which plaintiff seeks recovery is the same disability he suffered for about a year prior to and also as of the very date the policy was issued.

A somewhat analogous situation was before this court in the case

of *Priest v. Life Insurance Co.*, 116 Kan. 421, 227 Pac. 538, and in the opinion it was said:

"There was evidence tending to show that the agent through whom the application was made knew that Doctor Priest was seriously ill, but desired to have a policy issued to him because of his prominence, for the influence it would have upon other prospects. The agent testified that he was 'state agent' for the company, his office being at Topeka; another witness said he was the general agent for Kansas. A written contract between himself and the company, however, showed that his authority was confined to receiving applications and submitting them for approval. . . . There is some difference of opinion whether an insurance company is chargeable with knowledge of an applicant's condition obtained by its medical examiners or soliciting agent. . . . But assuming the imputed-knowledge rule to apply to them as well as to other agents, it does not extend to cases where answers are given by the applicant which he and the agent both know to be false, at least where the agent in question has no authority to determine finally whether a policy shall be issued on the application, for the company may not in this manner be made the victim of collusion between its representative and the applicant."

and the fourth paragraph of the syllabus lays down the rule:

"Where false answers concerning his health were knowingly made by an applicant for life insurance, the fact that the agent through whom the application was made, but who was not authorized to decide whether the policy should be issued, knew of their falsity does not prevent the company from successfully resisting payment on the ground of such fraud."

In the more recent case of *National Reserve Life Ins. Co. v. Jeffries*, 147 Kan. 16, 75 P. 2d 302, it was held:

"Where the policy is issued and delivered without the requirement of a medical examination, and the applicant is relieved of such examination solely by reason of his written representation of good health, such clause is applicable to the applicant's condition of health at the time of such representation, and the policy may be avoided where the applicant had actual knowledge, at such time, that he was not in good health."

We think the conclusion is inescapable that the giving of false answers to questions 14 and 15 of the application operated as a fraud on defendant company. While it is strenuously argued that the company should be bound by the acts of its agent, yet plaintiff does not point out any provision in the application or policy which grants authority to the agent to waive any provision or to bind the company in this respect. On the contrary, plaintiff's own testimony shows that he understood that the application which he signed must be approved by the home office before a policy would be issued. It surely

cannot be argued that the company would have issued this policy had questions 14 and 15 been answered truthfully.

There is still another very good reason why the demurrer should have been sustained. The policy provided indemnity only for disability resulting from illness contracted and beginning during the life of the policy. Obviously, the company would not be insuring an applicant against an illness or disease from which he was already suffering. Plaintiff does not even contend that he was a well man when he signed the application—in fact, as previously stated, he admits that he was suffering from a heart ailment during the whole period in question, and his suit is to recover disability benefits for the very illness from which he had been suffering for months prior to the issuance of the policy.

We think this fact alone, disclosed by plaintiff's own evidence, is sufficient to bar his recovery.

From what has been said it therefore follows that in the principal appeal the order of the lower court is reversed with directions to sustain the demurrer to plaintiff's evidence. Such holding renders it unnecessary to discuss the merits of plaintiff's cross-appeal from the order granting a new trial.