No. 45,063

Bruce T. Southards, *Appellant*, v. The Central Plains Insurance Company, Incorporated, *Appellee*.

(441 P. 2d 808)

Opinion filed June 8, 1968.

*E. Dexter Galloway,* of Hutchinson, argued the cause and was on the brief for the appellant.

*John F. Hayes,* of Hutchinson, argued the cause, and *Robert J. Gilliland* and *Victor D. Goering,* also of Hutchinson, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: Bruce T. Southards, herein referred to as Bruce or plaintiff, is a young man who purchased an automobile on a conditional sale contract. In the course of his dealings for the car, Bruce was sold a single premium, non-renewable health and accident policy with defendant, Central Plains Insurance Company, Inc., to secure the payments due on the car. This type of policy, we understand, is known to the trade as credit insurance. The premium for the policy, together with finance charges, a life insurance premium, etc., were added to the face of the contract and the tidy sum which resulted was payable at $72.25 per month for 40 months.

The policy bears date of 27 September, 1965. Later that same fall, Bruce was treated for anemia and in November was given a blood transfusion. After a second transfusion in the first week of January, 1966, Bruce was told by his doctor he had glomerulonephritis; more commonly known, and much more easily pronounced, as Bright's disease. On February 2, 1966, Bruce became totally disabled from that disease and we have been advised that he has since undergone a kidney transplant.

Demand was made on the insurance company for payment of $72.25 per month during the period of disability, as called for in the policy. Payment was refused on the ground that plaintiff's illness was contracted prior to the policy date and hence was not covered. This action followed.

Trial was had to a jury, which returned a verdict in plaintiff's favor. The trial court subsequently set the verdict aside and entered judgment for the defendant notwithstanding the verdict. Hence this appeal by plaintiff.

As we have said, the issue is whether the disability is covered under the policy. The policy provisions germane to this lawsuit are two:

1. "The Debtor is insured . . . against loss of time resulting directly and indepedently of all other causes from sickness first contracted after the effective date of this Policy."

2. Exceptions:

"The insurance under this Policy does not cover any disability: . . . (5) where the sickness or disease was contracted prior to the effective date of the Policy."

The contentions of the litigants can be stated briefly. Plaintiff maintains that since disability did not occur until after the policy

was issued, the sickness or disease, whichever glomerulonephritis may be termed, did not originate, or was not contracted, until after the effective date of the policy. On the other hand, defendant argues that although disability did not ensue until after the policy date, the disease was present at the date of issuance in such a stage as to be manifest to one versed in medical science.

Provisions contained in insurance policies covering sickness which exclude or limit liability in case of sickness or disease originating before a certain date are valid and enforceable. (29A Am. Jur., Insurance, § 1156, p. 303; *Mutual of Omaha Ins. Co. v. Walley*, 251 Miss. 781, 171 So. 2d 358.) Our court has held, however, that when an insurer seeks to avoid liability on its policy on the ground the circumstances fall within some exception contained in its policy, the burden is on the insurer to prove the facts which bring the case within the specified exception. (*Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571.) The Braly decision accords with general principles customarily applied by tribunals where action is brought on contracts prepared by the insurer.

Although the precise question posed by the divergent views of the present litigants has never before squarely confronted us in its present form, courts of other jurisdictions have had occasion to deal with the question directly. A decided majority, acknowledging the principle expressed in Braly, adhere to the rule that the origin of a sickness or disease, within the meaning of a health and accident policy, is that point in time when it is manifest to a person learned in medicine from symptoms or other physical conditions that the illness or disease exists. We think the rule is well expressed in 53 A. L. R. 2d 689:

"It is generally recognized that provisions in a health or hospital insurance policy requiring that the illness or disease from which the assured suffers originate a specified time after the date of the policy to be within the policy coverage are strictly construed against the insurer, and the illness, disease, or disability will ordinarily be deemed to have its inception when it first becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease."

To like effect are general statements of the law found in 29A Am. Jur., Insurance, § 1156, p. 303 and 10 Couch On Insurance 2d, § 41:814, p. 639.

In *American Ins. Co. of Texas v. Brown*, 203 Okla. 407, 222 P. 2d 757, the Oklahoma Court, in construing a policy which insured

against disability resulting from disease originating 30 days after the date of policy, said:

". . . illness or disability will be deemed to have its inception when the disease becomes manifest or active. · . . ." (p. 408.)

This case is cited with approval and followed in *Richards v. American Security Life Insurance Co.*, Okla., 303 P. 2d 1110, where the syllabus of the court reads:

"In an action on an insurance policy containing a provision providing indemnity for hospitalization 'resulting from sickness the cause of which originates while this policy is in force,' the sickness is deemed to 'originate' when it first becomes manifest by a symptom or condition from which one learned in medicine could with reasonable accuracy diagnose the specific disease which thereafter was the cause of the hospital confinement."

Similar language appears in *Royal Family Insurance Co. v. Grimes*, 42 Ala. App. 481, 168 So. 2d 262:

"It is a well established rule of law that the word 'originates,' as appears in the exclusionary provision of the policy, refers ordinarily to the time the sickness or disease is manifested, although the medical cause existed prior to this time. (Citing cases.)" (p. 483.)

In a well reasoned opinion, *Dowdall v. Commercial Travelers Mutual Accident Association*, 344 Mass. 71, 181 N. E. 2d 594, the court stated the rule in this fashion:

". . . While the definitive diagnosis was not made until later, it is apparent that the progress of the disease was well advanced when the policy was issued. Knowledge of the existence of the disease on the part of the plaintiff was not required; it was sufficient if the disease had in fact originated prior to the effective date of the policy. We are mindful that the word 'originating' in a policy of this sort should receive a restrictive construction; otherwise the purported coverage would be illusory. The mere presence of latent germs or seeds of illness in the body prior to the issuance of such a policy would not preclude recovery. 'Few adults are not diseased, if by that one means only that the seeds of future troubles are not already planted.' *Grain Handling Co. Inc. v. Sweeney*, 102 F. 2d 464, 466 (2nd Cir.). Thus, it has generally been held in construing policies of this type that the origin of a sickness or disease is deemed to be the time when it first becomes manifest or active, or when there is a distinct symptom or condition from which one learned in medicine can diagnose the disease. See note, 53 A. L. R. (2d) 682, 689. Here that test has been satisfied for the symptoms of the disease had become manifest long before the issuance of the policy. See *Mutual Benefit Health & Acc. Assn. v. Patton*, 37 F. Supp. 48 (E. D. Ky.). Cf. *Jefferson Life & Cas. Co. v. Bevill*, 264 Ala. 206; *Cohen v. North Am. Life & Cas. Co.* 150 Minn. 507; *Reserve Life Ins. Co. v. Lyle*, 288 P. 2d, 717 (Okla.)." (pp. 73, 74.)

The plaintiff relies in large part on *Milam v. Indemnity Co.*, 107

W. Va. 574, 149 S. E. 668. In our judgment that case may be distinguished from the one at bar. The insurance policy in Milam excepted only "sickness" not "disease." The materiality of this distinction becomes obvious when the following excerpt taken from the opinion is noted:

". . . The policy specifies *sickness contracted*, not disease, malady, or ailment contracted. While the word 'sickness' is technically synonymous with such words as 'disease,' it is popularly differentiated in this way: one is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected; he is regarded as sick, when that diseased condition has advanced far enough to incapacitate him. 'Sickness is condition interfering with usual vocations.' *Northwestern Ins. Co. v. Wiggin,* 15 Fed. (2d) 646; *Doody v. Davis,* (Cal.) 246 Pac. 339. . . ." (p. 576.)

Our attention is also directed by the plaintiff to citations contained in 10 Couch On Insurance 2d, § 41:801, pp. 631, 632, and 29A Am. Jur., Insurance, § 1154, p. 301. The citation from Couch is couched in these words:

"The words 'sickness' and 'disease' are technically synonymous, but given their popular meaning, as required in construing a contract of insurance, 'sickness' is a condition interfering with one's usual activities, whereas disease may exist without such result; in other words, one is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected, but is regarded as sick when that diseased condition has advanced far enough to incapacitate him."

The language from American Jurisprudence is practically identical with that in the foregoing quotation.

It is of interest to note that the only authority cited in support of the statements in Couch and American Jurisprudence is the Milam decision. Furthermore, we believe it obvious that the authors who prepared both texts considered there was a valid distinction between sickness and disease as those two terms are used in health and accident policies. Hence we conclude that neither Milam nor the two texts referred to can be held applicable to the situation before us, where both sickness and disease are excepted from the policy. We may add, however, that the rule formulated in the Milam case has attracted no great following where sickness alone is excepted.

The tenor of prior decisions by this court, where comparable situations were before us, appear to be in harmony with the general rule adopted in other jurisdictions. In *Klein v. Farmers & Bankers Life Ins. Co.,* 132 Kan. 748, 297 Pac. 730, this court, speaking through Chief Justice Johnston, said:

". . . What is good health as used in the insurance contract like the one in question? It is not apparent good health, nor yet a belief of the applicant that he is in good health, but it is that he is in actual good health. Of course, slight troubles or temporary indisposition which will not usually result in serious consequences, and which do not seriously impair or weaken his constitution, do not establish the absence of good health, but if the illness is of a serious nature, such as to weaken and impair the constitution and shorten life, the applicant cannot be held to be in good health. (*Miller v. Knights and Ladies of Security*, 103 Kan. 579, 175 Pac. 397; *Pickens v. Security Benefit Association*, 117 Kan. 475, 231 Pac. 1016.) . . ." (p. 753.)

This language was quoted with approval in *National Reserve Life Ins. Co. v. Jeffries*, 147 Kan. 16, 26, 75 P. 2d 302.

Having delineated the applicable rule, we still must determine whether, on the state of the evidence before it, the trial court ruled correctly in setting aside the jury's verdict and entering judgment in favor of the defendant.

The evidence relating to the origin and extent of the kidney disease afflicting plaintiff may be summarized briefly. In 1957, when he was about thirteen and a half years of age, Bruce suffered a bruised kidney while playing football. Thereafter, and until he moved to Hutchinson in 1959, he was under the care of a Belpre physician for a kidney condition which included blood in the urine.

Beginning in December, 1959, Bruce was under the care of Dr. Lukens, of Hutchinson, who treated him at regular intervals until about 1962 or 1963 and at irregular intervals thereafter until his last visit on February 25, 1965. Dr. Lukens testified that throughout the entire period plaintiff was afflicted with chronic glomerulonephritis, and from December, 1959, to February 25, 1965, he was never free of that disease. Dr. Lukens also testified there was no specific cure for the disease.

In July, 1965, Bruce consulted Dr. Burger of Hutchinson and underwent an appendectomy toward the end of that month. Dr. Burger continued to attend the plaintiff, prescribing medication and blood transfusions, until Bruce was forced to quit work February 2, 1966. It was in January, 1966, that Dr. Burger advised Bruce of his actual condition. The doctor testified that his diagnosis was chronic glomerulonephritis, which was a serious condition and which had preexisted his diagnosis for some period of time. He also testified that the condition of chronic glomerulonephritis existed in July of 1965.

A third Hutchinson physician, Dr. Stout, gave plaintiff a pre-

employment examination for Cessna in the fall of 1963, and passed
him for employment. Dr. Stout testified there was nothing in his
physical findings or lab tests to indicate a kidney infection or
kidney trouble on the date of his examination, although there was
a trace of albumin. Dr. Stout did not perform a microscopic ex-
amination which he said would have been necessary to disclose pus
or blood.

We believe the evidence permits but one conclusion: That on
September 27, 1965, the date on which the policy was issued, Bruce
was afflicted with glomerulonephritis to the extent that it was active
and manifest to those who specialized in medicine. Under such
circumstances there was no substantial issue to be determined by
the jury and the entry of a directed verdict was not only appropriate,
but was required, on the defendant's motion therefor.

The evidence is undisputed that on September 27, 1965, the
policy date, the disease of glomerulonephritis was active within the
plaintiff's body and that the same was then manifest from symptoms
and conditions recognizable by medical scientists. Such is the
clear import of the testimony given by Dr. Burger. Substantial
corroboration is found in the testimony of Dr. Lukens who testified
that Bruce was afflicted with chronic glomerulonephritis when he
was examined on February 25, 1965, and had never been free of
the disease since 1959.

Although Dr. Stout testified that his findings indicated no kidney
trouble, his examination of Bruce, for employment purposes only,
was conducted not later than November, 1963, nearly two years
before the policy is dated. Symptoms of the disease may have been
lacking in November, 1963, but this is not evidence of what Bruce's
condition was in February and July of 1965, when he was examined
and his condition diagnosed as Bright's disease by Drs. Lukens and
Burger.

This court has said on more than one occasion that where the
evidence stands uncontradicted and is such that candid persons
could not reasonably arrive at differing or opposite conclusions, the
matter becomes a question of law for the court's determination.
(*Schmid v. Eslick*, 181 Kan. 997, 317 P. 2d 459; *Casement v. Gear-
hart*, 189 Kan. 442, 370 P. 2d 95.) A good many years ago in *Kemp
v. Railway Co.*, 91 Kan. 477, 138 Pac. 621, we said:

"Courts should be careful not to encroach upon the province of jurors when
the facts, although undisputed are such that the minds of candid persons may

draw differing inferences and arrive at opposing conclusions. This wholesome rule, however, should not be stretched so far as to relieve the court from the solemn duty of deciding the issue in cases like this where such divergence can not be found consistently with reason and justice. In such a situation the question is one of law only." (p. 483.)

It is indeed regrettable that this young man, whose physical condition is so serious, now finds himself without the insurance which he doubtless thought the policy provided. He appears to have been quite candid about his condition, so far as he knew it, when taking out the policy, which by the way was issued without written application. No suggestion of misrepresentation is found on his part or that of the insurance agent. It appears probable to us that Bruce was not aware of his actual condition, and that he was not fully apprised concerning the state of his health until January, 1966, when Dr. Burger fully advised him.

Lack of knowledge on his part, however, is not required. (*Dowdall v. Commercial Travelers Mutual Accident Association*, supra.) The insurance contract clearly excepted sickness or disease contracted prior to the date of the policy and we are not at liberty to re-write the contract or to change the agreement which the parties themselves made. (*Anderson v. Rexroad*, 175 Kan. 676, 266 P. 2d 320; *Potter v. Northern National Gas Co.*, 201 Kan. 528, 441 P. 2d 802. The language used by the court in *Minear v. Benefit Association of Railway Employees*, 169 Kan. 199, 218 P. 2d 244, we feel to be appropriate under the present circumstances:

". . . The policy provided indemnity only for disability resulting from illness contracted and beginning during the life of the policy. Obviously, the company would not be insuring an applicant against an illness or disease from which he was already suffering. . . ." (p. 205.)

We find no error on the part of the trial court in setting aside the verdict and entering judgment in favor of the defendant, and its judgment is accordingly affirmed.