(591 P.2d 1094)

No. 49,881

KATHRYN L. McDANIEL, *Appellant,* v. STATE FARM MUTUAL INSUR-
ANCE COMPANY, a corporation, *Appellee.*

Opinion filed March 16, 1979.

*M. William Syrios,* of Michaud, Cranmer, Syrios and Post, of Wichita, for the appellant.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, for the appellee.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

FOTH, C.J.: This is an action to recover benefits under a health insurance policy. Plaintiff appeals from the trial court's holding that her condition was not covered by the policy's insuring clause definition:

"Sickness means any sickness or disease of a Covered Person *first manifesting itself* while this policy is in force with respect to such person and shall include all complications arising therefrom." (Emphasis added.)

The case was submitted to the trial court on deposition testimony, exhibits and stipulations. The court entered the following findings of fact and conclusions of law:

"1. The plaintiff made written application for a health insurance policy with the

defendant's agent, Quincy Seymour, on January 27, 1976. Mr. Seymour was the scrivener of the application in that he wrote out plaintiff's answers to questions asked of her from the application form. Plaintiff's application was accepted by defendant and a policy issued effective as of the day of application.

"2. On February 26, 1976, plaintiff consulted Dr. Ducey and gave a history of severe headaches, blurred vision, fatigue, and an episode of syncope or unconsciousness. She told Dr. Ducey she had experienced these symptoms for the past two to three months.

"3. On March 2, 1976, plaintiff was admitted by Dr. Ducey to the Wesley Medical Center for a complete examination. Upon admission to the hospital, she gave essentially the same history concerning her complaints and the length of their duration that she had earlier given Dr. Ducey, all as more fully set out in the record. However, plaintiff did not relate these symptoms to any particular illness or disease.

"4. After running tests, it was the opinion of Dr. Ducey and his consultants that plaintiff was suffering from an arterio venous malformation right frontal lobe. One symptom consistent with this diagnosis was the plaintiff's lack of concern for the symptoms that she had complained of to Dr. Ducey and upon admission to the Wesley Medical Center.

"5. Although plaintiff was not aware of the condition of an arterio venous malformation prior to or at the time of the effective date of the policy, that fact does not determine whether or not there is coverage under the defendant's policy for her condition.

"6. The words 'manifesting itself' as used in the policy's definition of *sickness* means that point in time when the sickness or disease becomes symptomatic and not necessarily when the exact nature of the sickness or disease is diagnosed by a physician after extensive testing.

"7. Dr. Ducey testified, and the Court so finds, that the history of complaints presented to him by the plaintiff were symptoms of an arterio venous malformation right frontal lobe. These symptoms were being experienced prior to the effective date of the policy based upon the history given Dr. Ducey and the Wesley Medical Center by plaintiff. Therefore, plaintiff's arterio venous malformation was symptomatic and manifesting itself prior to the effective date of the policy. Accordingly, the defendant's policy does not cover the plaintiff's medical and hospital expenses incurred because of the arterio venous malformation right frontal lobe.

"8. Based upon the above findings and the Kansas case law, the Court hereby enters judgment in favor of the defendant. Costs taxed to plaintiff."

We affirm on the basis of the trial court's findings, with the following additional observations:

First, appellant does not attack the finding (No. 2) that all the symptoms of February 26, 1976, had existed for at least two months—*i.e.*, since at least one month prior to the effective date of the policy. Appellant's sole contention on appeal, although expressed in different ways, is that before an illness "manifests itself" under the policy it must be clear to the policyholder, regardless of whether it is diagnosable by a physician.

Second, despite appellant's efforts to distinguish them we believe this case is controlled by *Southards v. Central Plains Ins. Co.,* 201 Kan. 499, 441 P.2d 808 (1968), and *Bishop v. Capitol Life Ins. Co.,* 218 Kan. 590, 545 P.2d 1125 (1976). In *Southards* the plaintiff had purchased credit insurance (health and accident) in conjunction with the purchase of a car on a conditional sales contract. The effective date of the insurance policy was September 27, 1965. Later that same fall, plaintiff was treated for anemia and was given a blood transfusion. After a second transfusion in January, plaintiff was told by his doctor that he had Bright's disease. The insurance company denied coverage because the policy excluded coverage "where the sickness or disease was *contracted* prior to the effective date of the Policy." (p. 500. Emphasis added.) The trial court held there was no coverage.

On appeal, plaintiff asserted that, since the sickness did not occur until after the policy was issued, it did not originate, or was not "contracted," until after the effective date of the policy. The insurer argued that, although *disability* did not ensue until after the policy date, the *disease* was present at the date of issuance in such a stage as to be manifest to one versed in medical science.

The Supreme Court first delineated the applicable rules in *Southards,* 201 Kan. at 499, Syl. ¶¶ 3 and 4:

"It is the general rule that the origin or inception of a sickness or disease, within the meaning of a health and accident policy requiring that sickness and disease be contracted after the effective date of the policy, is that point in time when the disease becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can diagnose the disease."

"Knowledge of his condition on the part of one afflicted with a disease is not essential to establish the existence or date of origin of the disease."

Applying those rules to the facts of the case, the court decided "[t]hat on September 27, 1965, the date on which the policy was issued, [plaintiff] was afflicted with glomerulonephritis to the extent that it was active and manifest to those who specialized in medicine." 201 Kan. at 505. The Court concluded its opinion by citing language from *Minear v. Benefit Association of Railway Employees,* 169 Kan. 199, 205, 218 P.2d 244 (1950):

". . . The policy provided indemnity only for disability resulting from illness contracted and beginning during the life of the policy. Obviously, the company would not be insuring an applicant against an illness or disease from which he was already suffering. . . ." 201 Kan. at 506.

The result was to affirm the denial of coverage.

In *Bishop* the plaintiff had purchased a "debtor-creditor" insurance policy providing that the insurer would make the debtor's monthly payments should he become totally disabled by reason of sickness. The policy excluded coverage for disability resulting from "a sickness or disease *existing* prior to the effective date" of the policy. 218 Kan. at 591. Emphasis added.

Almost seven months after issuance of the policy, plaintiff entered the hospital complaining of chest pains and shortness of breath. He was given a complete medical examination, and it was diagnosed that he was suffering from hardening of the arteries. His doctor concluded that he had suffered "an old heart attack," evidenced by the presence of an old scar on the wall of his heart. Plaintiff was then treated for arteriosclerotic heart disease and released. When the insurer denied coverage, plaintiff brought suit.

On appeal, the Supreme Court upheld the trial court's judgment in favor of the insurer. The Court, citing *Southards,* stated the rule and issue in this manner:

"A similar controversy was before this court in *Southards,* wherein we stated the test of the origin or inception of a sickness or disease, within the meaning of a health and accident policy requiring that sickness and disease be contracted after the effective date of the policy, to be that point in time *when the disease becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can diagnose the disease.* This is the rule followed by the majority of courts which have considered the question and it is controlling in the instant case. Thus, we focus our attention on the issue of whether the disease causing *plaintiff's disability was manifest or active prior to the date of the policy, or whether there was a distinct symptom from which one learned in medicine could diagnose the disease prior to the date of the policy."* 218 Kan. at 592. Emphasis added.

After reviewing the evidence, the Court concluded that plaintiff's disability was "manifest" prior to the date of the policy because the symptoms exhibited by plaintiff three months after the policy was issued were the same symptoms shown when he was examined six months prior to the issuance of the policy. In light of this fact, the Court could not say that the symptoms of heart disease "were not active or manifest to one learned in medicine prior to the effective date of the policy." 218 Kan. at 596.

In those cases, it will be seen, the policy language attempted to exclude preexisting conditions even though not ascertained or

*ascertainable.* The Court limited the policy language by holding that the disease must have "manifested" itself by symptoms before it could be said to be preexisting. If it did so "manifest" itself as to be diagnosable before the policy's effective date it was not covered. That, it was said, was the rule followed by the majority of the courts.

In this case the policy language is that previously employed by the court, *i.e.,* that the illness must have "manifested" itself. We think the language was designed to fit the judicial pronouncements, and that it is the equivalent of saying that there must be symptoms which would lead a physician to diagnose the illness, and not that the insured be aware of the existence of the disease.

Here, the symptoms exhibited by plaintiff after the effective date of the policy were found to be the same as those which she suffered one or two months prior to the issuance of the policy. On the basis of these symptoms plaintiff's doctor ordered the examinations and conducted the consultations with specialists which resulted in the diagnosis of her condition. Had she come to him with the same symptoms when she suffered from them before the policy was issued, he would have followed the same course and reached the same diagnosis. Under the rule stated in *Southards* and *Bishop,* plaintiff's disease first "manifested itself" prior to the effective date of the policy. The trial court therefore correctly found no coverage, and its judgment is affirmed.