No. 47,803

Jack Bishop, *Appellant,* v. The Capitol Life Insurance Company, et al., *Appellee.*

(545 P. 2d 1125)

Opinion filed January 24, 1976.

*George E. Grist,* of Grist & Bush, of Wichita, argued the cause and was on the brief for the appellant.

*John W. Jordan,* of Learned, Craig & Foley, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: In this action the plaintiff-appellant, Jack Bishop, seeks to recover disability benefits allegedly due him under a health and accident insurance policy issued by the defendant-appellee, Capitol Life Insurance Company (hereinafter referred to as Capitol). Capitol denied coverage on the ground the disease which caused the disability was in existence prior to the effective date of the policy. The jury found Capitol wrongfully denied coverage, and awarded plaintiff damages in the amount of $4,495.00. Upon motion of Capitol, the trial court set aside the verdict of the jury and directed judgment be entered in favor of Capitol. Plaintiff contends there was sufficient evidence to sustain the verdict of the jury and the trial court erred in ruling otherwise.

Plaintiff had been employed as a maintenance worker for the

United States Post Office in Wichita for more than ten years. At the time this action was brought he was about fifty years of age. On October 22, 1971, plaintiff procured a loan from Associates Financial Services Company of America, Inc., and in connection therewith he purchased a "debtor-creditor" insurance policy from Capitol providing for the payment of monthly benefits to the creditor in the event plaintiff should become totally disabled by reason of sickness or injury. The insurance policy excluded from coverage any disability resulting from sickness or disease existing prior to the effective date of said certificate. Those parts of the policy relevant to this appeal read as follows:

"MONTHLY BENEFIT FOR INJURY OR SICKNESS
"Part II

"When by reason of injury or sickness, the insured debtor is wholly and continuously disabled and prevented from engaging in each and every occupation or employment for wage or profit for which he is reasonably qualified . . . for more than fourteen consecutive days, the Company will pay periodically the monthly benefit stated in the schedule of this certificate for the period the insured debtor shall be so disabled . . . but in no event beyond the expiration date stated in the Schedule of this certificate.

"EXCEPTIONS AND LIMITATIONS
"Part III

. . . . . . . . . . . . . . .

"Disability resulting from an accident occurring or from a sickness or disease existing prior to the effective date stated in the Schedule of this certificate is not covered."

On May 17, 1972, almost seven months after issuance of the policy, plaintiff entered the Veterans Administration Hospital complaining of chest pains and shortness of breath. During his hospitalization he was under the care and supervision of Dr. Angelita Gabatin, a staff physician and specialist in internal medicine. Dr. Gabatin conducted a complete medical examination of plaintiff, including a physical examination, cardiogram, vectorcardiogram and neurological examination. It was Dr. Gabatin's initial diagnosis that plaintiff was suffering from hardening of the arteries which was causing chest pain and difficulty in breathing. In her opinion he had suffered "an old heart attack" which was evidenced by the presence of an old scar on the posterior wall of his heart. Plaintiff was treated for arteriosclerotic heart disease and released from the hospital on June 22, 1972.

On June 14, 1972, prior to release from the hospital, plaintiff submitted a written claim to Capitol for benefits under the policy issued him, by reason of total disability resulting from "coronary

heart disease." Capitol denied coverage of his disability, maintaining the disability, if any, was caused by sickness or disease in existence prior to the effective date of the policy. Suit followed and plaintiff brings this appeal from the trial court's order setting aside the jury verdict in his favor and directing a verdict for Capitol. It was the judgment of the trial court that as a matter of law the evidence was insufficient to sustain the verdict of the jury.

On appellate review of a trial court's ruling on a motion for a directed verdict, this court is governed by the same standards applicable to the trial court. (*Apperson v. Security State Bank*, 215 Kan. 724, 528 P. 2d 1211.) The question thus presented for our consideration is whether there was any substantial evidence to support the jury's finding that the cause of the disability was not in existence prior to the effective date of the policy. The burden is upon the insurer to prove the facts which bring the case within the specified exclusion. (*Southards v. Central Plains Ins. Co.*, 201 Kan. 499, 441 P. 2d 808.)

A similar controversy was before this court in *Southards*, wherein we stated the test of the origin or inception of a sickness or disease, within the meaning of a health and accident policy requiring that sickness and disease be contracted after the effective date of the policy, to be that point in time when the disease becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can diagnose the disease. This is the rule followed by the majority of courts which have considered the question and it is controlling in the instant case. Thus, we focus our attention on the issue of whether the disease causing plaintiff's disability was manifest or active prior to the date of the policy, or whether there was a distinct symptom from which one learned in medicine could diagnose the disease prior to the date of the policy.

After reviewing the record we are convinced the trial court properly directed that a verdict be entered in favor of Capitol in the absence of any substantial evidence to support a finding that the disease did not precede the issuance of the policy. In support of his claim, plaintiff offered the testimony of his personal physician, Dr. Harry Loewen, and of Dr. Angelita Gabatin. Dr. Gabatin's testimony was based solely on her examination of plaintiff subsequent to the effective date of the policy. She testified that plaintiff complained of chest pains and shortness of breath occurring in varying degrees over the past several years and increasing in the

last few weeks before being admitted to the hospital. Based on tests conducted in the hospital, Dr. Gabatin detected the presence of an old scar on the posterior wall of the heart and a slightly enlarged heart on the left side. It was her diagnosis that plaintiff was suffering from arteriosclerotic heart disease and associated angina pain, early decompensation or congestive heart failure, exogenous obesity, minimal respirative lung disease and slightly high blood pressure. During his hospitalization, one of the medications given to plaintiff was nitroglycerin, a vasodilatant which dilates the blood vessels to the heart and allows a greater flow of blood.

On cross-examination, Dr. Gabatin testified that after reviewing plaintiff's past medical history, together with X-rays, complaints exhibited, examination results, and all other medical records available, she was of the opinion that plaintiff had an arteriosclerotic heart disease as of April 13, 1971, more than six months prior to the issuance of the policy. Dr. Gabatin further testified that arteriosclerotic heart disease cannot be cured but can be controlled; and between April, 1971, and his hospitalization in May, 1972, plaintiff's body was never free of arteriosclerotic heart disease.

By way of explanation, Dr. Gabatin stated that arteriosclerotic heart disease reduces the supply of oxygen to the heart muscles, which in turn causes some pain in the chest area. This is the pain syndrome commonly referred to as anginal pain. As to the symptomatology which one would look for in diagnosing anginal pain associated with heart disease, Dr. Gabatin testified that typical symptoms are chest pains which come after exertion or meals, shortness of breath, and pain to the extremities on the left side of the body.

The bulk of the evidence relating to the cause of plaintiff's disability, however, comes from the testimony and medical records of his personal physician, Dr. Loewen. According to Dr. Loewen, he first examined plaintiff in January, 1963, at which time he noted the presence of a "right bundle branch block." He did not consider this to be of such a serious nature as to constitute a disability. In June of 1963, Dr. Loewen gave an electrocardiogram to plaintiff which showed increased pressure to the right side of his heart. In June, 1965, plaintiff complained of chest pains and was given treatment for an arthritic condition. In May, 1968, plaintiff saw his doctor and complained of trouble in breathing. One week later he again visited his doctor, complaining of short-

ness of breath and soreness in the muscles in his left leg. Notes from Dr. Loewen's records on that day indicate that he considered plaintiff to have an "early degree of cardiac failure." In addition, the results of an electrocardiogram showed some posterior wall damage to the heart. When questioned as to the significance of the damage to the wall of the heart, Dr. Loewen stated:

"Q. [by appellee's counsel] Okay. In medical parlance, doctor, there—you'd equate that with arteriosclerosis of some sort of a—circulation damage to the heart; would you not?

"A. [Dr. Loewen] That is by far and away the commonest cause for—for heart muscle damage, yes."

Plaintiff returned to Dr. Loewen on several occasions during 1969 and 1971, complaining of chest pains and difficult breathing which became worse with exertion. On January 25, 1971, Dr. Loewen examined plaintiff and at that time gave him a Masters' electrocardiogram which failed to indicate the existence of any heart disability. While the results of an electrocardiogram are not determinative of heart disease, they are nonetheless an important factor.

On April 13, 1971, plaintiff was again examined for complaints of substernal chest pains which became worse with exertion. Although a routine electrocardiogram indicated nothing new, Dr. Loewen prescribed nitroglycerin and consulted with plaintiff concerning the matter of disability. This was the last time Dr. Loewen saw him prior to the effective date of the policy, October 22, 1971.

Dr. Loewen's records indicate he next saw plaintiff on January 24, 1972, at which time he complained of lower chest pains and trouble in breathing which became worse with exertion. Dr. Loewen attributed the chest pains to an arthritic condition, but gave plaintiff medication for anginal pain on a "trial basis." Once again a routine electrocardiogram showed nothing new.

On May 1, 1972, plaintiff stopped work and approximately two weeks later he was admitted to the V. A. Hospital. While plaintiff was in the hospital, Dr. Loewen completed a medical report for his civil service disability retirement. The report, dated June 20, 1972, was based on plaintiff's January 24th examination. It stated that plaintiff was suffering from anginal heart pain relieved by nitroglycerin, cardiac decompensation, fainting spells and high blood pressure. Dr. Loewen indicated that plaintiff was totally and permanently disabled, and that he had been under his professional care for the disability since 1963.

Plaintiff filed his claim with Capitol under the insurance policy on June 14, 1972, based on the disability of "coronary heart failure." He was released from the hospital on June 22, 1972.

For our purposes, the significant date is October 22, 1971, the effective date of the insurance policy. If the disease which resulted in the disability existed prior to that time the exclusion would apply. It is undisputed that plaintiff had an extensive history of heart problems dating from 1963. This included an enlarged heart, a right bundle branch blockage, and posterior damage to the heart wall. Dr. Loewen stated the latter condition was most frequently caused by arteriosclerosis.

In addition, the record reveals a pattern of complaints and treatment which could only lead to the conclusion that plaintiff's heart disease was active prior to the issuance of the policy. Primarily, plaintiff repeatedly complained of chest pains and shortness of breath, both symptoms of heart disease. He was treated with nitroglycerin by Dr. Loewen prior to the date of the policy, which is a medication typically used for anginal pains. Dr. Loewen testified that most anginal pains are caused by hardening of the arteries or arteriosclerosis.

Plaintiff emphasizes the fact that several electrocardiograms taken prior to the date of the policy failed to indicate the presence of any heart disability. Yet, by Dr. Loewen's own admission, the electrocardiogram "does not tell the whole story." We cannot say why there was no indication of heart disability in the electrocardiograms, but on the basis of the entire record we do not believe that factor is controlling. Furthermore, the fact Dr. Loewen failed to diagnose the heart disease until January 24, 1972, is not determinative in the face of overwhelming evidence that plaintiff did indeed have heart disease in an active stage prior to the date of the policy. Dr. Loewen's conclusion that there was no heart disability until after the date of the policy is in direct conflict with the symptoms exhibited by plaintiff and the physician's own statements and findings in his medical records.

Perhaps the most compelling evidence in support of the trial court's decision is the fact that when Dr. Loewen filled out the civil service disability retirement medical report on June 20, 1972, he did not examine plaintiff and had not seen him since his last examination on January 24, 1972. Dr. Loewen admitted the medical report's diagnosis and findings were based on the January examination. On cross-examination, however, he testified that the symptoms

exhibited by plaintiff in January of 1972 were the same symptoms shown when he was examined the previous April, six months prior to the issuance of the policy. In light of this testimony we do not believe it could be said that the symptoms of heart disease were not active or manifest to one learned in medicine prior to the effective date of the policy. Dr. Loewen diagnosed the disability based upon distinct symptoms exhibited prior to the issuance of the policy. Under these circumstances, the trial court properly ruled as a matter of law that the evidence was insufficient to support the verdict of the jury.

The judgment of the trial court is affirmed.