(580 P.2d 893)
No. 49,038

VERYL L. THURMAN, *Appellee—Cross-Appellant,* v. MARGARET CUNDIFF and ROBERT CUNDIFF, *Appellants—Cross-Appellees.*

Opinion filed June 30, 1978.

*Larry Winn, III* and *Lyle D. Pishny,* of Lytle, Wetzler, Winn & Martin, of Prairie Village, for appellants—cross-appellees.

*John Anderson, Jr.,* of Anderson, Granger, Nagels and Lastelic, Chartered, of Overland Park, for appellee—cross-appellant.

Before SWINEHART, P.J., REES and SPENCER, JJ.

REES, J.: This is an action for false arrest. A jury verdict in favor of plaintiff was returned in the amount of $25,000 for compensatory damages. The trial court reduced the award by $10,000 and entered judgment for $15,000. Both sides appeal.

1. Defendants first contend the trial court erred in failing to grant them a directed verdict. They argue there was no evidence that either of them directed, requested, commanded or otherwise caused the plaintiff's arrest. We disagree.

On review of a ruling on a motion for a directed verdict, this court is governed by the same standards applicable to the trial court. *Apperson v. Security State Bank,* 215 Kan. 724, 528 P.2d 1211 (1974). The question here presented is whether there was any substantial evidence to support the jury finding that the

defendants were liable for false arrest. *Bishop v. Capitol Life Ins. Co.,* 218 Kan. 590, 592, 545 P.2d 1125 (1976); *Fisher v. Sears, Roebuck & Co.,* 207 Kan. 493, 485 P.2d 1309 (1971).

One seeking to recover for false arrest must prove he was unlawfully caused to be arrested by the defendant and, though it is not necessary that the arrest be directly ordered by the defendant, it must appear that the defendant either instigated it, assisted in it, or by some means directed or encouraged it. *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, 88, 468 P.2d 269 (1970); *Hammargren v. Montgomery Ward & Co.,* 172 Kan. 484, 494, 241 P.2d 1192 (1952). As to what constitutes direction or instigation of an arrest so as to render a defendant liable for false arrest, 32 Am. Jur. 2d, False Imprisonment, § 35, says in part:

"What is direction or instigation sufficient to impose liability on a private citizen for a wrongful arrest made by an officer, within the rule imposing liability on a citizen at whose request or instigation an arrest is made without a warrant, depends on the facts of each case. It is not necessary, to impose liability, that the defendant expressly direct the arrest. Nor need he be present when the arrest is actually made. However, he must take some active part in bringing the arrest about—that is, there must be some affirmative act on his part which induces the officer to make the arrest. . . ." (pp. 98-99.)

The record discloses that defendant Mrs. Cundiff was a Johnson County landowner. Plaintiff was the lessee of 320 acres which included most of the land surrounding her residence. Excluded from the lease was that land "which Lessor is now using for her private residence—yard, driveway, private lake (immediately east of the residence), an area of approximately five (5) acres." Plaintiff grazed cattle on the leased acreage. Since 1971, he had used a driveway which runs by Mrs. Cundiff's residence to gain access to the leased pasture. The evidence at trial was conflicting as to whether the driveway used by plaintiff was the particular driveway excluded by the lease. The driveway appears to have been plaintiff's only means of access to the pasture other than by driving across hay and brome fields. Plaintiff or his employee used the driveway at least every two or three days to enter the pasture to feed the cattle.

In late 1972 or early 1973, a dispute arose between plaintiff and Mrs. Cundiff concerning damage to the driveway allegedly caused by plaintiff's truck. Mrs. Cundiff informed either plaintiff or his employee that further use of the driveway would not be permitted.

Defendant Bob Cundiff frequently visited his mother, Mrs. Cundiff, on weekends and performed maintenance duties around the farm. On the morning of February 3, 1973, he was present at his mother's residence. Mrs. Cundiff had left the farm that morning to go to her other residence in Kansas City. Before leaving, she instructed her son to keep the gate to the driveway locked and to deny plaintiff access.

Plaintiff and his employee drove up to the gate and asked Bob Cundiff to unlock it. He refused and threatened to call the sheriff if plaintiff attempted to enter. Plaintiff and his employee drove away. They returned approximately twenty minutes later and placed some railroad ties across a ditch next to the locked gate. Plaintiff unfastened the strands of barbed wire from one fence-post and pulled the wire back to permit entry. Plaintiff then drove his truck across the ditch, through the fence, and down the driveway to the pasture. As he proceeded along the driveway, plaintiff either swerved to avoid Bob Cundiff, who was standing in the middle of the driveway, or intentionally drove at him. Which occurred depends upon whose testimony is believed.

Bob Cundiff twice telephoned his mother in Kansas City that morning and informed her of the events transpiring at the farm. She twice advised him to call the sheriff. Taking that advice, he called the sheriff's department and summoned them to the scene.

Ultimately, three sheriff's cars arrived. The deputies talked briefly with both Bob Cundiff and the plaintiff. There is evidence that Bob Cundiff told one deputy the plaintiff had taken down or cut "our fence" and had driven down "our private drive" after being told to stay out. Bob Cundiff testified he told a deputy, "That man came right at me and veered off" and he asked the deputy, "What can we do about it . . ." A deputy testified that he was told by Bob Cundiff that plaintiff had destroyed Bob Cundiff's wire. Plaintiff observed Bob Cundiff engaging in an animated conversation with a deputy and pointing at the plaintiff just prior to the arrest. After talking with Bob Cundiff, one of the deputies accused plaintiff of having cut the fence and intruding. There is no evidence in the record that Bob Cundiff at any time attempted to explain to the sheriff's deputies that plaintiff was his mother's lessee.

Plaintiff was handcuffed by a deputy. He was driven to the Johnson County courthouse in Olathe where he was briefly

interrogated and then detained in the jail area prior to release less than two hours later. The sheriff's report of the incident listed the offense as "destruction of property." No formal charges were filed and no warrant ever issued.

Although the foregoing does not indicate that either defendant expressly directed the sheriff's officers to arrest plaintiff, it includes substantial evidence upon which to base a finding that Bob Cundiff instigated the arrest. The fact that a defendant instigated a false arrest may be established by circumstantial evidence. *Knupp v. Esslinger*, 363 S.W.2d 210 (Mo. App. 1962); *Sylvester v. Buerhaus*, 71 R.I. 335, 45 A.2d 150 (1946).

Defendants contend that an individual cannot be held liable for false arrest if the officers making the arrest conduct an independent investigation of the situation prior to making the arrest. We do not quarrel with the rule that the mere giving of information to a peace officer tending to show that a crime has been committed is not enough to render the informer guilty of resulting false imprisonment by the officer. 21 A.L.R.2d Anno.: False Arrest—Liability—Private Person, § 23, p. 694; 32 Am. Jur. 2d, False Imprisonment, § 35, p. 100. One is not liable for false arrest where he merely states to a peace officer his knowledge of a supposed offense and the officer makes the arrest entirely upon his own judgment and discretion. *Jensen v. Barnett*, 178 Neb. 429, 134 N.W.2d 53 (1965).

In the present case there was substantial evidence that Bob Cundiff did more than merely supply the deputies with information. The evidence was sufficient to support a finding that he actually instigated or encouraged the arrest.

The record discloses little evidence that the deputies conducted an independent investigation beyond questioning Bob Cundiff and briefly speaking with plaintiff. The trial testimony of the deputies shows they remembered very little about the incident. One deputy testified he remembered that both parties to the disturbance were interviewed and "the complainant stated that the suspect cut some wires to his fence and entered his property. And he wanted to stop him." The deputies noticed that the barbed wire had been removed from one of the fenceposts, but "couldn't decide who was right or who was wrong, but to make sure, we brought him in so we could make some phone calls to get more facts on the case."

The jury was correctly instructed that defendants were not liable for false arrest if they merely informed the officers of the circumstances and left it to the officers to take such action as the officers deemed proper. The jury apparently determined that Bob Cundiff did more than merely inform the officers of the circumstances of the disturbance, and we are unable to disturb that determination.

Defendants argue that even if they did instigate plaintiff's arrest, the trial court still erred in failing to hold as a matter of law that they were free from liability because defendants had legal cause and justification for their actions. Again, we do not quarrel with the general rule that a party may not be held liable for false arrest where legal cause or justification existed for the restraint. Ordinarily, the owner of property, in the exercise of his inherent right to protect it, is justified in restraining another who seeks to interfere with or injure it where the restraint is reasonable in time and manner. 32 Am. Jur. 2d, False Imprisonment, § 74, p. 134.

The jury in the present case was instructed that defendants were not to be held liable if the charge made by them was well-founded and justified. We must conclude the jury found that the charge by Bob Cundiff was not well-founded or justified. We find the previously outlined evidence, together with inferences reasonably drawn therefrom, sufficient to support that determination by the jury.

Where no evidence is presented on a particular issue, or the evidence presented is undisputed and it is such that the minds of candid persons may not draw differing inferences and arrive at opposing conclusions with reason and justice, the matter becomes a question of law for the court's determination. *Schmid v. Eslick,* 181 Kan. 997, Syl. 5, 317 P.2d 459 (1957). However, the rule is not applicable in the present case. The evidence was such that the minds of candid persons could draw differing inferences and arrive at opposing conclusions.

2.  Defendants next contend the trial court erred in failing to direct a verdict in favor of Mrs. Cundiff. Defendants argue there was no evidence upon which Mrs. Cundiff could be held directly or vicariously liable for false arrest of plaintiff.

What constitutes agency and whether there is any competent evidence reasonably tending to prove the relationship is a question of law. *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366,

370, 548 P.2d 719 (1976); *Hendrix v. Phillips Petroleum Co.*, 203 Kan. 140, 453 P.2d 486 (1969). It is our province to determine if the record reveals any substantial competent evidence on which a finding of agency could be based, not to decide whether, under proper instructions relating to the law of principal and agent, it actually did exist as a matter of fact. *Carver v. Farmers & Bankers Broadcasting Corp.*, 162 Kan. 663, 672, 179 P.2d 195 (1947). This court must disregard any conflicting evidence or inferences and accept as true the evidence and inferences which support or tend to support the findings of the trial court. *Highland Lumber Co., Inc. v. Knudson,* supra, p. 371; *Farmers State Bank of Ingalls v. Conrardy,* 215 Kan. 334, 524 P.2d 690 (1974).

There is substantial evidence of an agency relationship present in the record of this case. Plaintiff testified that prior to the incident Mrs. Cundiff advised him he should contact her son as to all her business transactions. Plaintiff testified, "[S]he told me Bob would be from there on, to do all transactions with him because she wasn't going to be involved any more . . ." Bob Cundiff testified that he spent weekends with his son at his mother's farm; he and his son did the maintenance work around the farm; and he considered the maintenance their responsibility. It appears Bob Cundiff was present during all significant negotiations between Mrs. Cundiff and the plaintiff. The evidence is undisputed that on the morning of the incident Mrs. Cundiff told her son to keep the gate locked if plaintiff should try to use the driveway. Later, Bob Cundiff twice called his mother and was told on both occasions to call the sheriff. Bob Cundiff testified the decision to call the sheriff was not a result of his own independent judgment but was a result of his telephone conversations with his mother.

We conclude the evidence was sufficient to require the submission of the agency question to the jury. An agency may be shown by circumstantial evidence. *Linscott v. Conner,* 85 Kan. 865, 118 Pac. 693 (1911). The jury was fully and correctly instructed as to agency. Its finding that Bob Cundiff was his mother's agent must stand.

3. Defendants argue the trial court erred in allowing plaintiff to amend his prayer for damages. At the close of all the evidence, the trial court, on defendants' motion, struck plaintiff's claim for punitive damages but, over defendants' objection, permitted

plaintiff to amend his prayer for actual damages from $10,000 to $50,000.

Without citations or authority, defendants first contend allowance of the amendment violated K.S.A. 77-201 *First,* which sets forth the rule of statutory construction that "[t]he repeal of a statute does not . . . affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed. . . ." We do not find the rule applicable.

Defendants next contend the allowance of the amendment constituted an arbitrary abuse of discretion by the trial court. K.S.A. 60-215 governs the amendment of pleadings and provides that leave to amend be freely given when justice so requires. Amendments after the commencement of trial are within the discretionary powers of the trial court; the allowance or denial of an amendment will not constitute grounds for reversal unless it affirmatively appears that the substantial rights of the adverse party were affected by the trial court's ruling, and, further, that the ruling was a clear abuse of discretion. *Garcia v. Southwestern Bell Tel. Co.,* 216 Kan. 591, 533 P.2d 1242 (1975); *Hass v. Preferred Risk Mutual Ins. Co.,* 214 Kan. 747, 522 P.2d 438 (1974); *Commercial Credit Corporation v. Harris,* 212 Kan. 310, 510 P.2d 1322 (1973). The trial court is given wide latitude and discretion in permitting or refusing amendments of pleadings in the interest of justice. *Hoover Equipment Co. v. Smith,* 198 Kan. 127, 422 P.2d 914 (1967). We recognize such discretion is not unbridled. *Walker v. Fleming Motor Co.,* 195 Kan. 328, 330-331, 404 P.2d 929 (1965). As a general rule, however, amendments to pleadings are favored in law and shall be allowed liberally in the furtherance of justice to the end that every case may be presented on its real facts and determined on its merits. *Walker v. Fleming Motor Co.,* supra, p. 330. Trial courts are given broad discretionary powers concerning the amendment of pleadings, before or after judgment, when the amendment does not change substantially the claim or defense. *Collins v. City Cabs Inc.,* 192 Kan. 394, 396, 388 P.2d 597 (1964).

In the present case, the claim was for damages for false arrest. The claim was not changed by the amendment—only the amount sought. *Collins v. City Cabs Inc.,* supra, p. 396. Although the trial court's reasons for allowing the amendment are less than crystal-

clear, we find implicit in the court's action a finding that the evidence did support an award in excess of $10,000.

We are unable to conclude that the trial court abused its discretion in this case. However, we believe the allowance of an increase of a prayer for monetary recovery after all the evidence is in is not good practice where nothing has developed during trial demonstrating plaintiff's actual damage to be other than that known to him at the commencement of trial. The defendants have failed to show they were substantially prejudiced. Although defendants say they would have tried the case differently if the compensatory damages claim had been for $50,000 from the outset, we perceive no demonstration of how the defense of the case would otherwise have been conducted.

4. Plaintiff contends the trial court erred in refusing to submit the issue of punitive damages to the jury. We disagree.

Kansas has long recognized that an award of punitive damages may be made incident to false imprisonment or false arrest. *Wiley v. Keokuk,* 6 Kan. 94 (1870). In all three of the most recent Kansas false arrest cases, the additional issue of punitive damages was permitted to go to the jury and an award of punitive damages was made. *Sweaney v. United Loan & Finance Co.,* 205 Kan. 66, 468 P.2d 124 (1970); *Thompson v. General Finance Co., Inc.,* supra; *Hammargren v. Montgomery Ward & Co.,* supra.

Punitive damages are recoverable in an action for personal injury based on tortious conduct involving malice, willfulness or wanton disregard of the plaintiff's rights. *Carrick v. McFadden,* 216 Kan. 683, 533 P.2d 1249 (1975); *Beverly v. McCullick,* 211 Kan. 87, 505 P.2d 624 (1973).

Upon a full review of the record on appeal, we conclude the trial court did not err in its determination that the issue of punitive damages should not go to the jury for the reason that the evidence was insufficient to support a finding of the requisite conduct incident to the tort of false arrest.

5. Plaintiff also argues that the trial court erred in granting defendants' motion for remittitur and in reducing the judgment from $25,000 to $15,000 without plaintiff's consent and without giving plaintiff the option of a new trial.

The record shows that following the trial defendants made motions for new trial, judgment notwithstanding the verdict, and remittitur. Those motions were argued to the court at which time

the motions for new trial and judgment notwithstanding the verdict were denied. However, the court took the motion for remittitur under advisement. Subsequently, a journal entry and memorandum decision were filed by the court granting defendants' motion for remittitur and ordering the reduction of the verdict in the amount of $10,000. In neither the journal entry nor the memorandum decision did the trial court state the verdict was being reduced with the consent of the plaintiff or that plaintiff had been offered the option of a new trial. Nothing in the record indicates that plaintiff consented to the reduction or that plaintiff was ever offered the option of a new trial in lieu of the reduced verdict.

The law in Kansas concerning remittitur was set forth in *Ford v. Guarantee Abstract & Title Co.,* 220 Kan. 244, 553 P.2d 254 (1976), as follows:

"The authorities unanimously hold that a court, whether trial or appellate, is powerless to reduce the verdict of the jury in an action for unliquidated damages and render judgment for a less amount, unless the party in whose favor the verdict was rendered consents to the reduction, since a reduction under such circumstances invades the province of the jury, and violates the Seventh Amendment right to jury trial under the United States Constitution. The proper course, if a remittitur is refused, is to set aside the verdict and grant a new trial. (Annot., 53 A.L.R. 779 [1928]; *Kennon v. Gilmer,* 131 U.S. 22, 33 L.Ed. 110, 9 S.Ct. 696; *Dimick v. Schiedt,* 293 U.S. 474, 79 L.Ed. 603, 55 S.Ct. 296; and Annot., 95 A.L.R. 1163 [1935].) Language to the contrary in *Rooks v. Brunch,* 202 Kan. 441, 449 P.2d 580 and *Madison v. Wichita, Sedgwick County Health Dept.,* 213 Kan. 736, 518 P.2d 935 is disapproved." (p. 276.)

Accordingly, the trial court erred in reducing the compensatory damages award from $25,000 to $15,000 and the judgment entered by the trial court on the jury's verdict in accordance with its journal entry filed March 25, 1977, is reinstated.

Having fully and carefully reviewed the facts and circumstances as disclosed by the record on appeal, we agree with the trial court and conclude that the verdict for compensatory damages was too large by $10,000 and should be reduced by that amount.

Therefore, the judgment for compensatory damages is reduced to $15,000 upon the condition that the plaintiff accept the reduced amount of compensatory damages in writing within ten (10) days after this decision becomes final by filing his acceptance with the clerk of the district court, or, upon his failure to accept the remittitur within the time allotted, the defendants are granted a new trial as to both liability and compensatory damages.