**Joy CLARK, Respondent,**

v.

**SKAGGS COMPANIES, INC., Appellant.**

**No. WD 38081.**

Missouri Court of Appeals,
Western District.

Dec. 9, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 3, 1987.

Application to Transfer Denied
March 17, 1987.

**548**

Richard E. McLeod & Jeffrey A. Burns of Shook, Hardy & Bacon, Kansas City, appellant.

Philip E. Nonnemaker of Barbieri & Barbieri, Kansas City, for respondent.

Before SHANGLER, P.J., and MANFORD and BERREY, JJ.

MANFORD, Judge.

This is a civil action for false imprisonment and battery. The judgment is affirmed.

Appellant presents seven points which, in summary, charge the trial court erred (1) in overruling appellant's motions for directed verdict and for new trial on the false imprisonment count because there was no substantial evidence that respondent was restrained against her will; (2) in overruling appellant's motions for directed verdict and for new trial on the battery count because there was no substantial evidence that the security guard was acting within the scope and course of his employment; (3) in entering judgment in conformity with the verdicts and in overruling appellant's motion for new trial because the verdicts were excessive, were against the weight of the evidence and were not supported by substantial evidence; (4) in entering judgment in conformity with the verdicts and in overruling appellant's motion for new trial because the jury was biased and prejudiced by comments of opposing counsel during closing argument; (5) in submitting Instruction No. 8 because said instruction assumed a contested material fact; (6) in submitting Instruction No. 8 because said instruction allowed the jury to award damages twice for the same injury; and (7) in overruling appellant's objections to portion of opposing counsel's closing argument because said comments were improper and prejudiced appellant.

The pertinent facts are as follows:

On December 18, 1984, respondent, Joy Clark, was shopping at appellant's (defendant) store at 10th and Minnesota in Kansas City, Kansas.[1] While browsing in the cosmetics aisle, Clark encountered a uniformed security guard, one Johnny Rogers. Clark continued shopping and picked up some nail polish and carried it to another area of the cosmetics section to compare with some lipstick. Clark decided not to purchase the cosmetics and left the nail polish where she was comparing it with the lipsticks. After about fifteen minutes, Clark attempted to exit the store without making any purchases. She noticed the security guard was following her and she turned to him and asked if he knew her from somewhere. Rogers stated, "No, but I was wondering where you put that nail polish." Clark stated that it was somewhere back in the store. Rogers then asked Clark to take him to find the nail polish.

Clark testified that at that point she realized Rogers thought she was shoplifting and she felt that she had no choice but to accompany Rogers back into the store. Clark led Rogers into the cosmetics aisle but Rogers pointed to some doors that said "Employees Only" and stated, "Why don't we go through those doors and see if it's in your purse." Once inside the doors, Clark dumped the contents of her purse onto the top of some boxes. The nail polish was not there.

Clark was wearing blue jeans, a plaid blouse and a sweater-jacket. She removed the jacket and handed it to Rogers and said, "It's not in my sweater pockets ei-

---

1. It is undisputed that all incidents complained of in respondent's petition occurred in the state of Kansas. Accordingly, Kansas law is applied to the substantive issues, and Missouri law is applied to the procedural issues. *See Kennedy v. Dixon,* 439 S.W.2d 173, 184 (Mo. banc 1969) (adopting the "most significant relationship test" for determining the law to be applied in tort cases in Missouri).

ther." Rogers did not search the sweater. Clark patted her jeans pockets saying, "It's not in these pockets either." Rogers did not search the jeans pockets. Clark then said, "It's not in my shirt pockets", indicating toward the breast pockets of her blouse. Clark testified that it was obvious there was nothing in her blouse pockets because there was no lump or bulge of any package or container. Clark unbuttoned the blouse pocket buttons and said, "See", and Rogers stated, "Well, let me check," whereupon he stepped forward and reached out, placing both hands upon Clark's breasts and squeezed. Clark told Rogers that she didn't think that was legal. Clark testified that she felt offended, repulsed, embarrassed, violated and terrified.

Rogers apologized and asked Clark to accompany him into the store to find the nail polish. While walking through the store they were joined by a store clerk. Eventually, Clark led them back to the cosmetics aisle and found the nail polish with the lipsticks. The clerk stated, "Well, I guess we have to take your word for it." Clark said, "Well here it is and I had to be searched for this." The clerk asked, "Did you empty your purse?" When Clark stated that she did, the clerk responded, "Well, then he didn't search you." Clark asked if she could leave but got no response. Rogers apologized again and Clark repeated her request to leave. The clerk said, "Yeah, go on, get out of here."

Clark testified that during the time she was with the security guard, approximately fifteen minutes, she felt that she could not leave. Clark stated that she no longer feels free to browse through stores, she feels paranoid when shopping, and she no longer picks up little objects to examine them while shopping. Clark testified that she did not see a doctor about her problems, but that she had spoken with her father who is a doctor.

The jury awarded Clark $7,500 for the false imprisonment and $20,000 for the bat-

tery. Any other pertinent facts will be recited infra as necessary to the disposal of appellant's points.

Under its point (1), respondent contends the trial court erred in overruling its motions for directed verdict and/or for a new trial on the count of false imprisonment because there was no substantial evidence that appellant was restrained against her will.

■ One seeking to recover for false arrest or false imprisonment must prove that he or she was unlawfully caused to be arrested by the defendant, and, though it is not necessary that the arrest be directly ordered by defendant, it must appear that defendant either instigated it, assisted in the arrest, or by some means directed, countenanced or encouraged it. *Thompson v. General Finance Co., Inc.*, 205 Kan. 76, 468 P.2d 269, 280 (1970).

■ Appellant's own evidence established that Rogers was an employee of defendant[2] and that he had been instructed to conduct surveillance and to detain and/or apprehend suspected shoplifters. Although physical restraint is not essential, there must, in absence of such restraint, be words or conduct that induce the reasonable belief that resistence or attempted flight would be futile. *See Munsell v. Ideal Food Stores*, 208 Kan. 909, 494 P.2d 1063, 1076 (1972).

In the present case, respondent testified that she was approached by a uniformed security guard and she realized that he (the guard) was accusing her of shoplifting. She stated that at that point, she felt that she could not leave; that she had no choice but to accompany the guard back into the store. Appellant argues that there was no evidence that the guard used force or threats, or that he accused respondent of shoplifting, and that, in fact, respondent voluntarily accompanied the guard back into the store, wishing to cooperate.

2. Although the security guard was actually an employee of Advance Security, which does contract security for appellant, both parties agreed to try the case as though the guard was em- ployed by Skaggs, and, as an accommodation to both parties, Advance Security assumed the defense of the case.

On a motion for directed verdict, the evidence must be viewed in the light most favorable to the party against whom the motion is directed, according that party the benefit of all favorable inferences deducible from the evidence, and rejecting all unfavorable inferences. A motion for directed verdict will not be sustained unless the facts in evidence and the legitimate inferences to be drawn therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ. See Barnett v. M & G Gas Co., 611 S.W.2d 370, 371 (Mo.App.1981).

Viewing the evidence as stated supra, reasonable minds may infer from the evidence that respondent was intimidated and/or coerced by the presence of the uniformed security guard and that upon his request that she accompany him, respondent reasonably believed that flight would in fact be futile. Such an inference may be drawn from respondent's testimony that she realized the guard thought she was shoplifting and that she felt she had no choice but to cooperate with him. Furthermore, respondent stated that she asked permission to leave and in fact did not leave until said request was granted. The fact that she did so cooperate does not negate the conclusion that her actions were involuntary. The trial court did not err in overruling appellant's motions for directed verdict and for new trial, and appellant's point (1) is ruled against appellant.

Under its point (2), appellant argues that the trial court erred in overruling its motion for directed verdict and/or its motion for new trial on the count of battery because there was no substantial evidence that the security guard was acting within the scope of his employment.

As stated supra, on a motion for directed verdict the evidence must be viewed in the light most favorable to the party against whom the motion is directed, according that party the benefit of all favorable inferences deducible from the evidence and rejecting all unfavorable inferences. A motion for directed verdict will not be sustained unless the facts in evidence and the legitimate inferences to be drawn therefrom, are so strongly against the plaintiff as to leave no room for reasonable minds to differ. See Barnett v. M & G Gas Co., supra at 371. An employer is liable for the assaults committed by his employee upon a third party where such assaults are committed by the employee while acting within the scope of his employment. Murray v. Modoc State Bank, 181 Kan. 642, 313 P.2d 304, 312 (1957). Under the doctrine of respondeat superior, an employer may be vicariously liable for the act of his employee because there is a relationship between the act done and the employer's business, to wit: the employee in acting is benefiting the employer in the furtherance of his (the employer's) business. See Williams v. Community Drive-In Theater, Inc., 214 Kan. 359, 520 P.2d 1296, 1301–02 (1974).

It is not disputed that Johnny Rogers was a security guard for appellant and that he was on duty on December 18, 1984. Two witnesses testified on behalf of appellant, both of whom were familiar with the security policies of Skaggs stores and Advance Security. Both witnesses stated Rogers had been instructed on security policies, and that Rogers was instructed to attempt to apprehend and detain possible shoplifters and, if the suspect is cooperative, to "follow through with whatever is necessary". Furthermore, both witnesses stated that it was against policy for security personnel to make sexual advances to a suspected shoplifter and that if such incident should occur and be brought to the attention of the management, the employment would be terminated.

Appellant does not deny that Rogers put his hands upon Clark's breasts and squeezed. Rather, appellant argues that, in so doing, Rogers was acting outside the scope and course of his employment. Appellant states that the evidence, as testified to by respondent that "it was obvious" that there was nothing inside her breast pockets, establishes that Rogers acted for his own gratification and was in no way acting to benefit his employer's business. Appellant concludes that there was no evidence that Rogers acted within the scope and

course of his employment and that the evidence and legitimate inferences therefrom were such that reasonable minds could not differ on this.

The evidence was such that would support an inference that it was within the scope of Roger's employment to "search" a suspected shoplifter, and that, in so doing, Rogers would be acting to benefit his employer's business. The questions then become: Was Rogers attempting a search of respondent's breast pockets at the time he touched her breasts? Does the fact that Rogers' actions were outside the scope of decency and good taste take his actions outside the bounds of what might otherwise be classified as a search?

██ In an attempt to answer these questions, this court has examined the entire record before it and must conclude that the evidence was such that reasonable minds could in fact differ on this issue. The trial court did not err in overruling appellant's motions for directed verdict and for new trial, and appellant's point (2) is ruled against appellant.

Under its point (3), appellant argues that the verdicts were excessive, against the weight of the evidence, and lacked substantial evidence for their support.

██ The trial court did not err in failing to enter a remittitur on the award of damages because the doctrine of remittitur had been abolished in Missouri. *See Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99, 110 (Mo. banc 1985).

Appellant argues, however, that an appellate court may still consider whether the amount of a verdict is excessive or supported by the evidence in a case before it, citing *McPherson v. Bi-State Development Agency*, 702 S.W.2d 129, 132–33 (Mo.App. 1985).

Respondent was awarded $7,500 for the false imprisonment and $20,000 for the battery. It is not disputed that respondent lost no income nor anticipated future loss of income; she had no medical expenses; and she sustained no physical injuries.

██ Regarding the false imprisonment, Kansas law allows actual damages for false imprisonment without a showing of any loss of income, medical expenses or physical injury. *See e.g. Sweaney v. United Loan & Finance Co.*, 205 Kan. 66, 468 P.2d 124 (1970); *Hammargren v. Montgomery Ward & Co.*, 172 Kan. 484, 241 P.2d 1192 (1952); and *Thurman v. Cundiff*, 2 Kan.App.2d 406, 580 P.2d 893 (1978). Respondent testified that she felt humiliated and embarrassed that she had to accompany the uniformed security guard through the store and into the "Employees Only" room in full view of other shoppers and Skaggs employees.

This court has researched several Kansas cases of false imprisonment wherein the reviewing court has held that damages awarded were excessive and against the weight of the evidence. *See Hammargren v. Montgomery Ward & Co., supra.* (Ten thousand dollars actual damages awarded to wife, $7,500 actual damages awarded to husband for false imprisonment, which were awarded to couple who were taken to police station at instigation of retail store detective, and were detained there for about one hour, thereby allegedly injuring their credit and standing in the community, were excessive by $6,500 and $4,500 respectively.); *Lewis v. Montgomery Ward & Co.*, 144 Kan. 656, 62 P.2d 875 (1936). (Five thousand dollars for false imprisonment of woman on street who was in custody of policeman from seven to twelve minutes, on false charge of having taken goods from store, held excessive by $2,000), and *Thurman v. Cundiff, supra.* (In action for false imprisonment brought by lessee against lessor and her son, verdict of $25,000 for compensatory damages was excessive by $10,000.) *But see Sweaney v. United Loan & Finance, supra, Cordell v. Standard Oil Co.*, 131 Kan. 221, 289 P. 472 (1930), *Gariety v. Fleming*, 121 Kan. 42, 245 P. 1054 (1926), and *Wheeler & Wilson Mfg. Co. v. Boyce*, 36 Kan. 350, 13 P. 609 (1887), where courts held damages of $3,000, $500, $2,250 and $1,000 were not excessive.

In the opinions cited supra, the courts do not recite any formula or yardstick with which to gauge an award of damages. Ev-

ery case seemed to turn upon the facts and circumstances in question.

■ As stated earlier, this court is not allowed remittitur to pare down an award. In any event, this court cannot say that the jury award of $7,500 for false imprisonment wherein the plaintiff was detained within the store for a period of approximately fifteen minutes, where during such time she suffered embarrassment and humiliation, is against the weight of the evidence. Therefore, the trial court did not err in entering judgment in conformity with the verdict and in overruling appellant's motion for new trial on the count of false imprisonment.

In regard to the battery, appellant again argues that the award was excessive and against the weight of the evidence because plaintiff suffered no physical injury, lost no income, and had no medical expenses.

■ Damages for mental suffering may be recovered where such suffering is the proximate and natural result of the assault even though no bodily injury was inflicted. *William Small & Co. v. Lonergan*, 81 Kan. 48, 105 P. 27 (1909). Interestingly, *Lonergan* is the only case this court was able to locate wherein a Kansas court discusses the right of a plaintiff to receive such damages where no physical injury results from the battery. Furthermore, and coincidentally, the facts in *Lonergan* are similar to those in the present case. Lonergan was shopping in defendant's store. She was carrying a bag containing merchandise purchased at another store. When she attempted to leave defendant's store without making a purchase, she was stopped by a security guard who accused her of shoplifting, snatched the bag from her person and searched the contents. Lonergan's petition included a count for assault and battery. Lonergan alleged that defendant's employee's actions embarrassed and humiliated her. The court held that such mental suffering, which was the proximate and natural result of the assault, was compensable even though the plaintiff suffered no physical injury.

■ In the present case, respondent testified that when the guard put his hands on her breasts she felt offended, repulsed, terrified and violated. This court holds that the award of $20,000 on the battery count was not against the weight of the evidence. The trial court did not err in entering its judgment in conformity with the verdict or in overruling appellant's motion for new trial.

Appellant argues further in its point (3) that the excessiveness of the awards indicate juror bias. Stated as such, appellant's point is not well-taken upon this court's finding that the awards were not excessive and were not against the weight of the evidence. Appellant's point (3) is ruled against appellant.

Under its point (4), appellant argues that the trial court erred in entering judgment because the jury was biased and prejudiced as a result of argument of respondent's counsel.

Respondent's request to submit instructions on punitive damages was denied by the trial court. During closing arguments the following occurred:

[Counsel for respondent, MR. NONNEMAKER]: Maybe you haven't noticed, but throughout the trial there has been no representative of Skaggs at this trial. They have a right to have a representative here, but their only representative has been Mr. McLeod [counsel for appellant], and I must confess that he's a pretty good-looking-guy come to represent them and show what Skaggs looks like, what Skaggs' actions are. I think this action speaks of their approach and their feelings toward the type of matters that are involved in this case.

I'm asking you to tell Skaggs something different.

MR. McLEOD: Objection, Your Honor. This is approaching an argument. It's impermissible under the submission of this case.

THE COURT: Sustained.

MR. NONNEMAKER: I'm telling you that innocent people like Joy Clark have rights, and I'm telling you that Skaggs

should care for those rights and their employer should.

MR. McLEOD: Objection, Your Honor. Same objection.

THE COURT: Sustained.

■ Appellant's objections to the now-complained of comments of opposing counsel were sustained. Appellant did not request any further relief from the trial court, and therefore it is not entitled to complain on appeal that the trial court erred in taking no more remedial action at the time of the improper comments. *See Krudwig v. Fowler*, 394 S.W.2d 290, 292 (Mo.1965). Appellant's point (4) is ruled against appellant.

Under its point (5), appellant argues that the trial court erred in the submission of an instruction. The challenged instruction reads as follows:

Your verdict must be for Plaintiff if you believe:

FIRST, the guard, Johnny Rogers was an employee of Skaggs and was acting within the scope and course of his employment by Skaggs at the time of Plaintiff's detention, and

SECOND, Johnny Rogers intentionally restrained Plaintiff against her will.

Unless you believe that plaintiff is not entitled to recover by reasons of Instruction No. 9.

Appellant argues that because the instruction limits the occurrence to "the time of Plaintiff's detention" and does not first require a finding that plaintiff was, in fact, detained, the instruction assumes a contested fact, i.e. that plaintiff was detained.

■ The above instruction is MAI 23.04 but the pattern instruction has been modified by the inclusion of the paragraph containing the objected-to language. Whenever Missouri Approved Instructions contains an instruction applicable in a particular case which the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other on the same subject. Rule 70.02(b). Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instruction shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts. Rule 70.02(e). The giving of an instruction in violation of the provisions of Rule 70.02 shall constitute error, its prejudicial effect to be judicially determined. Rule 70.02(c).

■ The above instruction is MAI modified. Therefore, this court must determine whether such modification was necessary to fairly submit the issues and, if so, whether the modification was simple, brief, impartial and free from argument. The complained-of paragraph requires a finding that at the time of the occurrence, the guard was an employee of Skaggs and was acting within the scope and course of his employment. Such a finding is necessary to hold the employer liable. A separate instruction was submitted defining "scope and course of employment" (MAI 13.02) but there was no other instruction requiring a finding that during the incident the guard was acting within the scope and course of his employment. Therefore, the modification was necessary to fairly submit the issue of respondeat superior.

■ The use of the word "detention" is to describe the period of time during which the guard must have been acting within the scope and course of his employment. Perhaps words such as "occurrence", "incident" or "event" would have been better suited. However, the use of the word "detention" in the paragraph does not relieve the jury from the requirement of finding that a detention did in fact occur because such a finding is required by the next paragraph: "SECOND, Johnny Rogers intentionally restrained Plaintiff against her will." In fact the above cited paragraph is the only finding required by MAI 23.04. The additional language in the instruction does not change the pattern instruction, but merely adds an essential requirement, necessary for a plaintiff's verdict.

The trial court did not err in submitting the instruction or in overruling appellant's

motion for new trial and appellant's point (5) is ruled against appellant.

Appellant, under its point (6), argues that the trial court erred in submitting the above instruction (set out supra) because it allowed the jury to award damages twice for the same injury and act of Skaggs' employee in that the jury could have arrived at its verdict on Count I (false imprisonment) due to a finding that the touching of respondent's breast constituted a "detention" or "restraint", or due to a finding that respondent's restraint was unreasonable (and thus not entitled to protection under another instruction) due to the touching of respondent's breasts, and could then have arrived at its verdict on Count II (battery) due to the touching of respondent's breasts.

 Appellant failed to raise this objection at trial and although such is not required to preserve the issue for appeal, as long as it is raised in the motion for new trial, the failure to object at trial may be considered on the issue of prejudice. *See Hamilton Hauling, Inc. v. GAF Corp.*, 719 S.W.2d 841 (Mo.App.1986), citing *Hudson v. Carr*, 668 S.W.2d 68, 71–72 (Mo. banc 1984). If a defect in an instruction is not readily apparent to counsel preparing to argue the case, it is unlikely the jury will be confused or misled. *Cornell v. Texaco, Inc.*, 712 S.W.2d 680, 682–83 (Mo. banc 1986).

Appellant argues that the instruction was misleading because it failed to define or to specify what acts of appellant's employee constituted a "restraint" or "detention".

Websters New Collegiate Dictionary, 1977, defines restrain and detain as follows:

restrain ... la: to prevent from doing, exhibiting, or expressing something ... b: to limit, restrict, or keep under control ... 2: to moderate or limit the force, effect, development, or full exercise of ... 3: *to deprive of liberty; esp: to place under arrest or restraint* ... [emphasis added]

detain ... 1: to hold or keep in or as if in custody 2: to keep back (as something

due) ... 3: *to restrain esp. from proceeding* ... [emphasis added]

 Juries are credited with having common sense and an average understanding of our language. *Wims v. Bi-State Development Agency*, 484 S.W.2d 323, 325–26 (Mo. banc 1972). The jury had been informed that two separate counts were being submitted. Two separate verdict directing instructions were given. This court is not persuaded to believe that the jury did not understand the instructions as given. Appellant was not prejudiced by the giving of the instruction, and appellant's point (6) is ruled against appellant.

Under its final point, point (7), appellant argues that the trial court erred in overruling its objections to certain comments during final argument.

Neither appellant nor respondent were able to locate the security guard, Johnny Rogers, who was no longer employed by Skaggs at the time of trial. Appellant's witness testified that numerous efforts were made in an attempt to locate Rogers, but none were successful. Appellant introduced into evidence an incident report purportedly made by Rogers shortly after his encounter with respondent. The report was admitted, over objections of respondent, under the business records exception to the hearsay rule.

During closing argument for respondent, the following occurred:

[MR. NONNEMAKER] Skaggs depends on this report to tell their story. But it's an incomplete story. You have read it. You have seen the story in this report. It deprives you of the opportunity of seeing Mr. Rogers and hearing his testimony.

MR. McLEOD: Objection, Your Honor. It's improper argument. We have no control over Mr. Rogers.

THE COURT: Overruled.

MR. NONNEMAKER: I have had no opportunity to cross-examine Mr. Rogers on this report.

Now, Skaggs says that they have looked for Mr. Rogers and that they have spent—spared no expense to bring Mr.

Rogers in to you, but I submit to you that that's just another fact for you to consider.

MR. McLEOD: Same objection, Your Honor. This is an improper argument. It's spoliation of the evidence not in our control.

THE COURT: Overruled.

▇▇▇▇ The failure of an opposing party to put on a key witness raises a negative inference that the witness' testimony would not be favorable to that party. However, it is improper for a party to argue that negative inference where the witness was equally available to both parties. *See Leehy v. Supreme Express & Transfer Co.*, 646 S.W.2d 786, 790–91 (Mo. banc 1983). Whether a witness is equally available to both parties, precluding one from commenting on the other's failure to produce the witness, depends upon several factors including one party's superior means of knowledge of the existence and identity of the witness, the nature of the testimony that the witness would be expected to give, and the relationship borne by the witness to a particular party as the same would be reasonably expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of one party and against the other. *Hill v. Boles*, 583 S.W.2d 141, 145–46 (Mo. banc 1979).

▇▇▇▇ In our state, it has been held that a defendant's employee is not an equally available witness to plaintiff in a tort action and plaintiff may comment upon the employee's failure to testify. *See e.g. Duboise v. Railway Express Agency, Inc.*, 409 S.W.2d 108, 113 (Mo.1966). However, in the present case, Rogers was not employed by Skaggs at the time of trial, nor at the time the lawsuit was filed, and he could not be located by either party.

Appellant did not have superior means or knowledge of the identity, existence, or for that matter, of the whereabouts of Rogers because appellant had informed respondent of the potential witness and had shared with respondent all the information in its (appellant's) possession concerning Rogers' whereabouts.

As regards the nature of the testimony Rogers would be expected to have given, this court has no reason to believe that Rogers would have given testimony inconsistent with his statement contained in the incident report which was admitted into evidence. Appellant argues that the expected testimony (consistent with the report) was not in conflict with respondent's version of the facts and therefore could not be expected to damage respondent's claim. The report, however, does conflict with respondent's version of the facts. The report states that respondent offered to have the contents of her purse examined. Respondent claims that it was Rogers who insisted her purse be emptied. The report states that respondent insisted on being searched. Respondent claims that it was Rogers' suggestion that they go into the "Employees Only" room and that she did not ask to be searched. Furthermore, the report says nothing about Rogers touching respondent's breasts, but states that Rogers touched her shoulder. Again, this conflicts with respondent's version of the facts. The testimony Rogers may be expected to have given would only serve to damage respondent's claim and support appellant's defense.

Appellant further argues that since Rogers was not employed by Skaggs at the time the lawsuit was filed or at the time of trial, he (Rogers) would have no personal interest in the outcome of the litigation. Appellant overlooks the fact that had the jury believed Skaggs' defense to the battery (i.e. that the touching of respondent's breasts was outside the scope and course of Rogers' employment) then Rogers would be personally liable for the battery and respondent could institute a lawsuit against him. Therefore, Rogers did have a personal interest in the outcome of the litigation.

▇▇▇▇ This court holds that Rogers was not an equally available witness to both parties and respondent's comments during closing argument did not constitute prejudicial error. Appellant's point (7) is ruled against appellant.

The judgment is, in all respects, affirmed.

All concur.